[Civ. No. 23136.  Second Dist., Div. Three.  July 15, 1959.]

JULENE K. VOGAN, Respondent, v. VORIE B. McLAUGHLIN et al., Appellants.

A. P. G. Steffes for Appellants.

Dolley, Jessen & Painter and Louis Miller for Respondent.

WOOD (Parker), J. — Plaintiff's first cause of action was for rescission of an agreement for the purchase of the Brentwood Motel. (The alleged ground of rescission was misrepresentation as to the income from, and the value of, the motel.) The second cause of action was for money had and received in the motel transaction. The third cause of action was for damages for fraud in that transaction, in the event rescission could not be had.

In a nonjury trial, judgment was for plaintiff for $18,000 damages, on the third cause of action, against the defendants Mr. and Mrs. McLaughlin and Mr. and Mrs. Ford, who were the sellers of the motel. (Another defendant was the Inglewood Savings and Loan Association which held for collection, on behalf of the sellers, a purchase money note that was made by the plaintiff. The judgment provided that the amount of the judgment should be credited on the note.)

The said sellers (defendants McLaughlin and defendants Ford) will be referred to herein as the defendants. They appeal from the judgment.

Appellants (defendants) contend that the evidence does not support the finding that plaintiff was induced to purchase the motel by reason of false representations as to the gross income from the motel for 1953 and 1954. They also contend that the court erred in compelling defendants to produce copies of their income tax returns; and erred in receiving the copies in evidence.

In October, 1954, plaintiff Mrs. Vogan purchased the motel and furniture therein from defendants for $118,000, and she paid therefor $35,000 in cash, and executed a note for $18,139.33, payable to defendants and secured by a trust deed on the real property. The remainder of the purchase price was the amount of encumbrances which were then upon the motel property, which encumbrances plaintiff agreed to pay.

This action was commenced on October 3, 1955.

The court found that plaintiff was induced to purchase the motel by reason of false representation made by defendants and their agent Mr. Findeisen, as follows: that the gross income from the motel for the year 1953 was $24,806; the gross income for the first eight months of 1954 was $16,876.50; the gross income from September 1, 1953, to September 1, 1954, had averaged in excess of $2,000 a month; the real and personal property were worth $125,000. The court also found that the gross income for the year 1953 was not in excess of $20,918.15; the gross income for the first nine months of 1954 was not in excess of $14,289.61; the gross income from September 1, 1953, to September 1, 1954, had not averaged in excess of $1,500 a month; the value of the real and personal property was $100,000; plaintiff had paid $118,000 for the property; plaintiff was damaged in the amount of $18,000 (the difference between the amount plaintiff paid and the value of the property) by reason of the fraud of defendants.

Defendants had acquired the Brentwood Motel in October, 1948. Thereafter, and until the sale to plaintiff, defendants Mr. and Mrs. McLaughlin operated the motel and kept the records of the income.

In July, 1954, the plaintiff, in response to an advertisement, went to the office of Mr. Findeisen, a real estate broker, and talked to him regarding the purchase of a motel. Mr. Findeisen showed the Brentwood Motel to her and said that the gross annual income therefrom was between $24,000 and $25,000, and that the purchase price was $135,000. Plaintiff told him that the income was "O. K.," but the price was too high. Prior to September, 1954, Mr. McLaughlin had discussed the sale of the motel with Mr. Findeisen, and on September 23, 1954, Mr. McLaughlin listed the motel for sale with him. The gross annual receipts from the motel for 1953, as stated in that listing, were $24,887, and the selling price was $125,000. (The record does not show whether defendants had previously listed the property for sale with Mr. Findeisen.) In September, 1954, in response to plaintiff's inquiry by telephone, Mr. Findeisen said that he still had the Brentwood Motel for sale. Plaintiff went to his office and said that she was still interested in the motel, but the price was too high. Mr. Findeisen replied that he thought he could get a better price for her. Then he and plaintiff went to the motel and inspected it. After they returned to his office and he had made a telephone call, he told plaintiff that he thought "he could get the place for $120,000," and

that the income was "close" to $25,000 a year. On September 28, 1954, plaintiff told Mr. Findeisen that she wanted to see a "breakdown" of the costs of operation and to see "some proof of the income." A "breakdown" of the costs of operation, which he gave to her, showed a total cost of $1,350 a month. He said that he could not show the books until she had made a deposit. He also said that the value of the motel, based on five times the gross annual income, was about $120,000. She submitted an offer of $115,000 for the motel, and she gave him a check for $5,000 as a deposit. He and plaintiff signed a deposit receipt which recited, among other things, that the offer was $115,000 and was "subject to proof of 1953 gross receipts as submitted." He told her that he would have to "contact" Mr. and Mrs. McLaughlin. After making a telephone call, Mr. Findeisen told her that the McLaughlins said they would have to talk to Mr. and Mrs. Ford. On October 1, 1954, he told her that the McLaughlins thought that they should have $120,000 for the motel. Plaintiff increased her offer to $118,000, and wrote the offer on the back of the deposit receipt which she and Mr. Findeisen had signed on September 28. On October 2, Mr. McLaughlin, upon behalf of the sellers, accepted the offer of $118,000. Later on the same day, plaintiff and Mr. Findeisen went to the motel and examined the books, which were produced by Mr. McLaughlin. Plaintiff testified that Mr. Findeisen "called off" the monthly income figures from the books and she wrote the figures on slips of paper; then she "called off" the figures from the books and Mr. Findeisen wrote the figures on slips of paper. The slips of paper which were written by plaintiff were received in evidence as plaintiff's Exhibits 5 and 6. The income, as shown by those exhibits, was $24,806 for 1953, and was $16,876.50 for the first eight months of 1954. On October 4, an escrow was opened, and immediately thereafter plaintiff and Mr. Findeisen went to the motel and again inspected the books. They checked the income figures and inspected registration cards. When they had inspected the cards for the letters "A" and "B" they stopped checking the cards. Plaintiff testified that, "Well, we got through the A's and B's, I believe, and we just stopped because I said I was perfectly satisfied that the income was there because I took it from the books twice."

The escrow was closed on October 14, 1954, and plaintiff operated the motel from that date to and including the time of trial (June, 1957). The average gross monthly income

from the motel during that period was, as follows: for the last two and one-half months of 1954, $1,394; for 1955, $1,588; for 1956, $1,555.75; for the first five months of 1957, $1,395.88.

On September 30, 1955, plaintiff gave defendants a notice of rescission of the transaction.

Copies of defendants' income tax return for 1953 and 1954 were introduced in evidence by plaintiff. The returns had been filed by defendants in the tax offices before this action was commenced. Those copies stated that the gross income from the motel for 1953 was $20,918.15, and for 1954 was $14,289.51. Copies of defendants' amended returns for 1953 and 1954 were introduced in evidence by defendants. The amended returns were filed by defendants in the tax offices after this action had been commenced. Those copies stated that the gross income from the motel for 1953 was $25,050.65, and for 1954 was $19,648.19. Three books of defendants which pertain to the income from the motel were introduced in evidence by plaintiff. One book was for the period from January 1, to June 8, 1953; another one was for the period from June 9 to December 25, 1953; the other one was for the period from July 14, 1954, to October 14, 1954. (It thus appears that the periods of time covered by those three books did not include the period from December 25, 1953, to July 14, 1954. According to the testimony of Mr. and Mrs. McLaughlin the book covering that period had been lost.) Plaintiff testified that the three books, which she introduced in evidence, had been shown to her by Mr. McLaughlin, and that another book had been shown to her which was for the period between December 25, 1953, and July 14, 1954. (This was the period covered by the book that allegedly had been lost.) The monthly income, as shown by the three books which plaintiff introduced in evidence, was the same as the monthly income shown by the slips of paper (for those same periods) which plaintiff prepared at the time she and Mr. Findeisen examined the books. Another book which pertains to the income (and disbursements) was introduced in evidence by defendants. The income, as shown by that book, was $25,050.65 for 1953, and $19,648.19 for nine and one-half months in 1954. Mrs. McLaughlin, testified that on October 4, 1954 (the day the escrow was opened), plaintiff "looked through" that book.

Plaintiff introduced evidence that on May 13, 1954, Mr. McLaughlin listed the motel for sale with a real estate broker

(not. Mr. Findeisen), and that the receipts from the motel for 1953, as stated in that listing, were $25,000, and the selling price was $130,000. Plaintiff also introduced evidence that on July 26, 1954, Mr. McLaughlin listed the motel for sale with another broker (not Mr. Findeisen), and that the receipts from the motel for the 12 months preceding July 26, 1954, as stated in the listing, were $24,899, and the selling price was $130,000.

Plaintiff testified as to the manner in which she operated the motel after she purchased it. Her testimony was to the effect that she operated it efficiently.

In support of their contention that the evidence does not support said finding that plaintiff was induced to purchase the motel by reason of false representations, appellants (defendants) argue that the evidence shows that plaintiff relied solely on defendants' gross income records in determining the income from the motel; that since no direct attack was made by plaintiff upon any single item on those records, the records constitute positive evidence that the income was as shown by those records; there was no evidence that the income was not as set forth in those records, except the original income tax returns; the statements of income in those returns were "mere conclusions" of defendants, and such conclusions could not be considered as substantial evidence contrary to the income records; in order to draw an inference of fraud from the original income tax returns, it would have been necessary to find that defendants had correctly stated their gross income in those returns; all of the evidence, with the exception of the "bare statements" of gross income in the original returns, was to the contrary. The question as to the amount of income from the motel was one of fact for the determination of the trial judge. There was evidence that after plaintiff took possession of the motel she operated it efficiently, and that the gross income therefrom was considerably less than the gross income as shown by defendants' books. Also, the original income tax returns showed that the gross income was considerably less than the gross income as shown by the books which were exhibited to plaintiff. Under the evidence the trial judge might well have concluded that defendants' books and records, which were exhibited to plaintiff, did not set forth correctly the income from the motel, and that the income as shown in the original income tax returns was the income received from the motel. The evidence was sufficient to support the finding to the effect that plaintiff was induced to

purchase the motel by reason of false representations of defendants.

Appellants contend that the court erred in compelling them to produce copies of their income tax returns for 1953 and 1954; and erred in receiving the copies in evidence. During the taking of the depositions of defendants Mr. McLaughlin and Mrs. Ford, each of said defendants was requested by plaintiff's attorney to produce copies of his or her income tax returns for 1953 and 1954. Defendants' attorney objected on the ground that the copies of the returns were immaterial as to any issues involved in the action. Each of said defendants refused to produce the returns. Thereafter, plaintiff obtained orders of court requiring each defendant (whose deposition was being taken) to show cause why he or she should not "answer the questions." At the hearing of the orders to show cause, said defendants were ordered "to answer." Thereafter, the taking of the deposition of Mr. McLaughlin was resumed. At that time, he produced copies of the income tax returns of the defendants McLaughlin for 1953 and 1954, and he also produced copies of the returns of the Brentwood Hotel, a partnership, for those years. At that time plaintiff's attorney asked Mr. McLaughlin whether the returns had been amended. On advice of counsel, he refused to answer that question. Thereafter, the taking of the deposition of Mr. McLaughlin was resumed, and he testified that the returns he had previously produced were amended returns. Plaintiff's attorney then requested Mr. McLaughlin to apply to the federal and state governments for copies of the original returns. Thereafter, defendants' attorney delivered to plaintiff's attorney copies of the original federal and state income tax returns of defendants and of the Brentwood Hotel, a partnership, for 1953 and 1954. At the trial, when plaintiff's attorney offered the copies of the returns in evidence, defendants objected to the offer on the following grounds: that copies of the returns were "immaterial as far as any issues in this case are concerned"; the copies were "self-serving declarations on the part of defendants"; and the copies were "secondary evidence" and that "the books and records would be the primary evidence." The objections were overruled and the copies were received in evidence. Appellants argue that the copies of the income tax returns were privileged and that the privilege was based on public policy and could not be waived.

In *Webb* v. *Standard Oil Co.*, 49 Cal.2d 509 [319 P.2d 621],

72

plaintiffs sought to recover damages which were sustained when their house was destroyed by a fire that allegedly was caused by the negligence of defendants. In that action the trial court refused to order plaintiffs to produce copies of their state and federal income tax returns for the year of the fire. ▆ In affirming a judgment for plaintiffs, it was said, at page 513: "The purpose of the amended statutory provisions [sections 19282 and 19283 of the Revenue and Taxation Code] prohibiting disclosure [of information set forth in the returns] is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes. If the information can be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated. The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns." In that case it was also said, at page 512: "We shall assume, for purposes of discussion, that such returns were admissible if not privileged." ▆ In *Atherley* v. *MacDonald, Young & Nelson, Inc.* 142 Cal.App.2d 575 [298 P.2d 700], it was said at page 585: "A general objection does not raise specific grounds not urged [citation], and an objection specifying the wrong ground is as bad as a general objection, and amounts to a waiver of all grounds not urged. [Citations.]" ▆ In the present case, as above stated, defendants did not object to producing the copies of the returns on the ground that the copies were privileged or on the ground that the copies were inadmissible by reason of the provisions of sections 19282 and 19283 of the Revenue and Taxation Code; nor did they object to the offer of the copies in evidence on either of said grounds. Since the questions as to whether the income tax returns were privileged or were inadmissible, by reason of said code sections, were not raised at the trial, those questions will not be determined on appeal. By not making such an objection in the trial court, defendants waived the right to contend on appeal that the copies were privileged or inadmissible by reason of the said code provisions. The copies of the returns were material, as prior statements made by defendants under oath, as to the income from the motel. It is to be noted that defendants introduced copies of their

amended tax returns in evidence. The copies, which were introduced in evidence by plaintiff, were not self-serving declarations as to her. The copies were not secondary evidence of the books and records. The court did not err in receiving the copies of the returns in evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied August 4, 1959, and appellants' petition for a hearing by the Supreme Court was denied September 11, 1959.