[Civ. No. 49741. Second Dist., Div. Four. June 3, 1977.]

FLORA WYSHAK, Plaintiff and Respondent, v.
ROBERT H. WYSHAK, Defendant and Appellant.

## Counsel

Sanford Levenberg for Defendant and Appellant.

Sara Kleban Radin and James E. Sutherland for Plaintiff and Respondent.

## Opinion

**JEFFERSON (Bernard), J.**—Petitioner Flora Wyshak obtained a writ of execution and levied on real property belonging to her ex-husband, respondent Robert Wyshak. The amount she sought was $6,000, representing the arrearage, as of December 10, 1975, of spousal support payments of $250 per month, payable by respondent pursuant to an interlocutory judgment of divorce that was entered on June 24, 1960. Petitioner also obtained an order for the appearance of respondent as a judgment debtor to be examined concerning his property.

Respondent noticed a motion to recall the writ of execution and to quash the writ and levy and the order for the appearance of respondent as a judgment debtor. In the papers supporting the motion and at the

hearing on the motion, respondent did not question the amount due, or offer any defenses relating to petitioner's entitlement to the accrued spousal support. Respondent's sole contention was that the post-judgment procedure that allowed petitioner to obtain the writ and levy execution upon his property was unconstitutional, a violation of due process guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution. The due-process-of-law violation was premised on the fact that he was not given prior notice and an opportunity to defend against the issuance of the writ before its issuance.

The trial court denied respondent's motion. Thereafter, respondent obtained a stay order pending appeal. Petitioner then made an ex parte application to vacate the stay which was granted. Respondent's appeal is from the order of denial of his motion to quash the writ and levy and order for appearance of judgment debtor. He reiterates the contention made in the trial court that since he did not receive prior notice of petitioner's application for the writ of execution, and was not given an opportunity to contest its issuance, he had been deprived of an interest in property contrary to the due-process-of-law requirements of the federal Constitution.

In the early case of *Endicott-Johnson Corp.* v. *Encyclopedia Press* (1924) 266 U.S. 285, 288 [69 L.Ed. 288, 291-292, 45 S.Ct. 61], the United States Supreme Court considered the issue of whether postjudgment garnishment procedure, available to a judgment creditor without further notice of hearing to a judgment debtor, was violative of due process of law. The *Endicott* court held that due process did not require that notice and opportunity for hearing be afforded a judgment debtor before post-judgment garnishment was effectuated. *Endicott* has not been overruled. (See *Moya* v. *DeBaca* (D.N.M. 1968) 286 F.Supp. 606, 608, app. dism. *per curiam*, 395 U.S. 825 [23 L.Ed.2d 740, 89 S.Ct. 2136].)

It is true that in such cases as *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983] the United States Supreme Court has struck down, as violative of due process of law, *prejudgment* wage garnishment and replevin procedures which did not afford the asserted debtor an opportunity to litigate the underlying claim against him prior to a seizure of his assets. California has recognized and applied the principles of *Sniadach* in such decisions as *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] and *Blair*

v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].

In the instant case, however, we are faced with the issue of the constitutionality of *postjudgment* execution procedures. The underlying judgment in question here was obtained after proceedings in which respondent had an adequate opportunity to be heard. We know of no authority holding that, after judgment, due process of law requires that additional opportunities for notice and hearing must be offered a judgment debtor such as respondent, before execution may be levied.

On the contrary, the current decisional law has rejected attacks made in the constitutional context against post-judgment execution procedures. In *In re Marriage of Crookshanks* (1974) 41 Cal.App.3d 475, 478 [116 Cal.Rptr. 10], it was contended that the issuance of a writ of execution for unpaid child support and attorney's fees, without prior notice or hearing, violated due process. The court stated: "Appellant's contention . . . is frivolous. . . . [¶] . . . The *Sniadach-Randone* rationale is inapplicable to a California writ of execution. . . . [¶] . . . The judgment itself was rendered in a proceeding in which the debtor had an opportunity to be heard. . . ."

In *Raigoza* v. *Sperl* (1973) 34 Cal.App.3d 560 [110 Cal.Rptr. 296], injunctive relief was denied a judgment debtor who claimed that California's post-judgment wage garnishment procedure was violative of due process because of lack of notice or hearing. It was there said: "There is no question that a self-styled creditor may not seize an alleged debtor's property without notice and an opportunity for a hearing concerning the merits of his claim. [Citations.] . . . [¶] . . . *Sniadach* did not turn on the nature of the property seized, but on the lack of an opportunity to contest the seizure. . . . [¶] We hold that due process, as recognized and applied in *Sniadach,* does not invalidate California's procedures relating to the postjudgment garnishment of wages which may be exempt from execution." (*Raigoza, supra,* 34 Cal.App.3d 560, at pp. 565-567.)

And in *Taylor* v. *Madigan* (1975) 53 Cal.App.3d 943 [126 Cal.Rptr. 376], an effort was made to invoke notice and hearing requirements after judgment, as constitutionally imposed, to enable judgment debtors to avail themselves of homestead protection, but the effort was unsuccessful. The court observed that such cases as *Sniadach* and *Randone* "have *no* application to the question before this court. All of them dealt with

prejudgment proceedings which constituted a taking of the alleged debtor's property *before he had an opportunity to be heard on the underlying claim." (Taylor, supra,* 53 Cal.App.3d 943, 963.) (Italics in original.)

Respondent argues herein that a judgment for spousal support, payable prospectively on an installment basis, represents a type of judgment distinguishable from the one-sum type and to which additional due process protection should apply. He tells us that *Crookshanks,* which is squarely in point, was wrongly decided and, in addition, differs from the case at bench in that there was no levy following issuance of the writ. He places reliance on *Griffin* v. *Griffin* (1946) 327 U.S. 220 [90 L.Ed. 635, 66 S.Ct. 556], which held that a judgment for accrued alimony awarded a respondent by a New York court was invalid as a denial of due process of law to petitioner therein because the judgment was obtained without notice to the petitioner. In *Griffin,* respondent creditor brought suit to establish the New York judgment in the District of Columbia. It was in the District of Columbia court that the petitioner raised the due-process-of-law defense which was sustained by the United States Supreme Court in *Griffin* pursuant to the doctrine that "[a] judgment obtained in violation of procedural due process is not entitled to full faith and credit when sued upon in another jurisdiction." (*Griffin, supra,* 327 U.S. 220, at p. 228 [90 L.Ed. 635, at p. 640].)

Respondent herein contends that *Crookshanks* was decided in violation of *Griffin* and, hence, cannot be authority for holding that California's postjudgment procedures for levying execution upon an installment alimony judgment do not violate federal due process requirements.

We do not find that *Crookshanks* was decided contrary to the due-process-of-law principles established by *Griffin* or that *Griffin* is controlling in the situation presented in the instant case. The *Griffin* case is distinguishable from the case at bench and from *Crookshanks* because the laws of New York, considered in *Griffin,* differ materially from the California laws which respondent attacks as unconstitutional in the case at bench. The New York laws provided that "alimony which has accrued under a decree of divorce may not be collected by execution unless and until a judgment for the amount of alimony accrued but unpaid is docketed by order of the court which issued the decree. [Citation.] And upon a motion to docket as a judgment, arrears of alimony awarded under a prior decree, the husband may defend on the grounds that the

alimony or some part of it is not due because of the death or remarriage of the wife, [citation]; or that the obligation has been discharged by payment or otherwise, [citation]; or that circumstances have so changed as to justify a *reduction of alimony already accrued by modification of the alimony decree,* [citations]." (*Griffin, supra,* 327 U.S. 220, at p. 227 [90 L.Ed. 635, at pp. 639-640].) (Italics added.)

The *Griffin* court emphasized the importance of prior notice to the alimony judgment defendant because of the right afforded by New York law for such a defendant to obtain a modification of the accrued arrearages before the docketing of a judgment for the accrued arrearages. Thus, the court stated that "[t]he right afforded by that section [section 1170 of the New York Civil Practice Act] is a *substantial* one, and may, under the law of New York, be exercised by him, *in effect by way of defense,* in addition to the defense of payment, in a proceeding begun by his wife to docket a judgment for accrued alimony." (*Griffin, supra,* 327 U.S. 220, at p. 229 [90 L.Ed. 635, at p. 641].) (Italics added.) The *Griffin* court concluded, therefore, that "[b]ecause of the omission [of notice of the proceedings to docket the judgment], and to the extent that petitioner was thus deprived of an opportunity to raise defenses otherwise open to him under the law of New York against the docketing of judgment for accrued alimony, there was a want of judicial due process, and hence want of that jurisdiction over the person of petitioner prerequisite to the rendition of a judgment *in personam* against him." (*Griffin, supra,* 327 U.S. 220, at p. 228 [90 L.Ed. 635, at p. 640].)

■ Unlike New York, California does not provide for a motioned hearing—that may be contested—before a judgment for spousal support arrearage is *perfected.* The fact that such judgments represent installments that have accrued, and may, in the case of spousal support, be defeated by the occurrence of certain contingencies such as payment, or death of the obligor, or remarriage of the obligee (see Civ. Code, § 4801), does not set them apart from other California judgments in terms of enforcement.

Under Code of Civil Procedure section 681, "[t]he party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment." The writ of execution issues on court order after review of the creditor's affidavit of nonpayment. Section 4380 of the Civil Code, which deals specifically with alimony or support orders and judgments provides: "Any judgment, order, or decree of the court made or entered

pursuant to this part may be enforced by the court by execution, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." Rule 7 of the Rules of the Superior Court of Los Angeles County (applying to applications for ex parte orders) provides in section 13 thereof that "[a]n application for the issuance of a writ of execution as to an order or judgment for the payment of money in installments shall be verified by the judgment creditor, and shall set out the pertinent provisions of the order or judgment, the total amount which has been paid, the amount of principal then due and the particulars as to any interest claimed. . . ."

■ Although, in the instant case, respondent asserts that a clerk issued the writ of execution, without any order of court as required by the California statutes, the record does not support this assertion. The writ of execution states on its face that the writ was issued pursuant to court order dated 12-10-75. In the absence of some portion of the record contradicting this statement on the face of the writ itself, we apply the presumption set forth in Evidence Code section 664 that official duty has been regularly performed.

In view of the differences between New York law and California law with respect to perfecting an installmentjudgment, the contention that the California laws for postjudgment enforcement of accrued unpaid installments fail to meet the procedural due process requirements of *Griffin* must be rejected. As stated by a lower federal court, "*Griffin* stands for the proposition that a judgment obtained in a jurisdiction *in violation of its own procedural due process* is not entitled to full faith and credit when sued upon (or used) in another jurisdiction." (*Cooley* v. *Weinberger* (E.D.Okla. 1974) 398 F.Supp. 479, 484.) (Italics in original.)

That differences in statutes may well dictate differences in requirements as to the necessity of a preseizure hearing to comply with the constitutional right of due process of law is recognized by recent holdings of the United States Supreme Court. In *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600, 610 [40 L.Ed.2d 406, 415; 94 S.Ct. 1895], the court stated: "The requirements of due process of law 'are not technical, nor is any particular form of procedure necessary.' [Citation.] . . . 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' [Citations.]" And in *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], the court expressed the governing principle in this language: "These decisions underscore the truism that ' "[d]ue process." unlike

some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' [Citation.] Accordingly, resolution of the issue whether the . . . procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected."

A lower federal court has upheld, against a constitutional due process attack, Georgia statutes similar to California statutes in permitting postjudgment enforcement of the installment-type support judgment without prior notice to the debtor. Under Georgia law, a support judgment is conditional in the sense that there are defenses to it, but in *Halpern* v. *Austin* (N.D.Ga. 1974) 385 F.Supp. 1009, 1013, the court concluded that Georgia procedure met the *Endicott* court's requirement because, "[a]lthough the judgment can be modified, defenses to its payment may arise, or other contingencies may occur, there is still the prior judicial determination of the existence of the alleged debt where plaintiff obtained a hearing." *Halpern* held that it was not constitutionally impermissible or unreasonable to place the burden on the judgment debtor to come forward subsequently with defenses to avoid payment.

It is true that several cases have suggested that it would be better procedure for a judgment creditor seeking enforcement of a support obligation to notice a motion *prior* to obtaining issuance of the writ (see, e.g., *Cochrane* v. *Cochrane* (1943) 57 Cal.App.2d 937, 939 [135 P.2d 714] and *Martin* v. *Martin* (1970) 5 Cal.App.3d 749, 755 [85 Cal.Rptr. 339]), so that the judgment debtor may contest the right to execution. This rationale is suggested by the language of Civil Code section 4380, which provides, in pertinent part, that "[the judgment] *may be enforced* by the court by execution, . . ." (Italics added.) The California Supreme Court has interpreted this language, originally contained in Civil Code section 139, and carried over without change to Civil Code section 4380, as giving the trial court a discretion "to determine in each case whether execution is an appropriate remedy for enforcing its order." (*Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988].)

■ The question, however, is whether *Griffin* or other authority *mandates* such proceedings in California *prior* to issuance of a writ of execution, as a requirement of procedural due process of law. We conclude that it does not, because it is not unreasonable to impose upon the judgment debtor an obligation to carry the burden of seeking relief

from a writ of execution *after* the fact of its issuance. The debtor has full knowledge from the proceedings resulting in the installment-type alimony or support judgment that attempts to collect accrued arrearages may come through postjudgment execution procedure.

We recognize that the United States Supreme Court has not expressed itself on the question of whether, and to what extent, if any, *Griffin* was intended to modify the procedural due process principles set forth earlier in *Endicott*. Since the *Endicott* decision was not referred to in *Griffin*, it cannot be said with any degree of absolute certainty that *Griffin* was *not* intended to have any modifying effects on the procedural due process principles set forth in *Endicott*. A limited uncertainty as to the meaning and extent of the *Griffin* holding has been expressed by some courts. Thus, in *Brown* v. *Liberty Loan Corp. of Duval* (5th Cir. 1976) 539 F.2d 1355, 1364, it was said that "[s]ince the majority opinion in *Griffin* does not mention *Endicott-Johnson*, we do not benefit from a reconciliation of their holdings by the Supreme Court. . . . [¶] . . . It is indeed possible to view these cases as dealing with essentially the same question, i.e. whether due process requires notice before any judicial proceedings or actions are undertaken to enforce a judgment, *but giving different answers.*" (Italics added; fn. omitted.) It is our view, however, that the holding of *Griffin* must be limited to the question of due process requirements as applied to state laws similar to those of New York—laws that specifically *dictate a hearing* to determine the amount of arrearages due on an installment-type judgment *before* any levy of execution on the judgment debtor's property.

California's postjudgment procedures for collecting a judgment—whether it be of the flat sum variety or the installment variety—seeks to strike a just and equitable balance between the competing interests of the parties and is in conformity with the principle that "[i]dentification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action." (*Fusari* v. *Steinberg* (1975) 419 U.S. 379, 389 [42 L.Ed.2d 521, 529, 95 S.Ct. 533].)

Thus, in the case of levy on real property in California, we note that Code of Civil Procedure section 692, subdivision 3, provides that before a sale of the property may take place to satisfy the debt, certain notice requirements (i.e., by posting and certified mail) must be met. The judgment debtor thus has an opportunity to contest the issuance of the writ of execution, and the levy, by a noticed motion to quash (as was

done in the case at bench). (See 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, §§ 85, 86, 87, pp. 3454-3455.) At that time the judgment debtor is given an adequate opportunity to invoke the discretionary power, which is lodged in the trial court, to defeat the execution. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 9, pp. 3393-3395.)

■ ■ We hold that the California postjudgment procedures for enforcement, by execution, of judgments providing for installment support payments are reasonable and are not violative of due process, and that respondent's contention in this regard is without merit. In the case at bench, respondent did have a postjudgment execution hearing, a hearing on noticed motion to recall the writ of execution and to quash the writ and levy, and order for appearance of judgment debtor; he had an opportunity to present any defenses he may have had to the issuance of the writ and the levy made by petitioner. He did not contest the amount due under the judgment, nor offer facts concerning petitioner's status, nor claim that payment had been made. We hold that the trial court correctly denied respondent's motion.

The order appealed from is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied June 21, 1977, and appellant's petition for a hearing by the Supreme Court was denied July 28, 1977.