[Civ. No. 20631. Third Dist. Nov. 25, 1981.]

In re the Marriage of MARY LOU and LAWRENCE A. UTIGARD.
LAWRENCE A. UTIGARD, Respondent, v.
MARY LOU UTIGARD et al., Appellants.

COUNSEL

Henry S. H. Fong for Appellants.

Michael R. Farrah for Respondent.

OPINION

**BLEASE, J.**—Mary Lou Utigard (Mary Lou) and four of her adult children appeal from the judgment (writ of execution) which determined that Lawrence A. Utigard (Lawrence) owed Mary Lou, but not the children, over $12,000 in arrearages for child support.[1] The primary issue is whether the children are entitled to enforce support orders issued to their mother to avoid the bar of a statute of limitations applicable to her. We hold that they are not and affirm the judgment.

FACTS

Mary Lou and Lawrence separated in 1970 and, in 1971, an interlocutory decree of dissolution was entered; Mary Lou was given custody of the children and Lawrence was ordered to provide $300 per month for child support. The eight children of the marriage then ranged from seven to nineteen years of age. Lawrence repeatedly failed to provide child support as ordered and Mary Lou, on four separate occasions, sought issuance of a writ of execution to obtain the arrearages. In May 1975, the court modified the judgment, ordering child support only for the four remaining minor children in the amount of $75 per child per month to be paid to the Business Administration Division of the San Mateo Department of Health and Welfare. Since then, Lawrence has failed to make any child support payments, except for $800 which he paid directly to Mary Lou.

In September 1980, Mary Lou and the four adult children (the children who were minors when the judgment was modified in 1975) filed a document entitled "cross-complaint" to enforce the child support order. In addition, Mary Lou moved to join Lawrence's present wife in the action. On December 22, 1980, they filed an amended cross-complaint for

---

[1] The children have a right to appeal from a judgment in which they claim an interest, notwithstanding that they are not parties to the action.

money judgment and for a writ of execution. Their purpose was to bring the children into the action as the real parties in interest.

On December 26, 1980, the court ruled in part as follows: "The motion for joinder is denied.... [¶] The Court finds that the children are not barred by the statute of limitations from enforcing their right to child support not paid under a dissolution judgment, but the children are not parties herein, and the 'cross-complaint' is not authorized to be litigated in a family law act proceeding pursuant to [California Rules of Court] Rule 1212."[2]

In February 1981, Lawrence moved for a modification of child support. Thereafter, the "complaint" for money judgment, writ of execution and the motion for modification for child support were consolidated and tried by the court. Judgment was subsequently entered in favor of Mary Lou, granting her a writ of execution in the amount of $12,475, plus interest, representing accrued child support unpaid by Lawrence. Unhappy with the judgment for numerous reasons, Mary Lou and children appeal.

DISCUSSION

I

To understand the children's purpose for seeking execution in their names requires a brief explanation.

Sometime after the final decree of dissolution, Lawrence remarried. In 1975, after Mary Lou sought a writ of execution for then accrued child support, Lawrence quitclaimed his interest in a home owned by himself and his new wife (Andrea) to Andrea. Mary Lou knew of the conveyance, but made no effort to have it set aside. When she filed this action in September 1980, it was her intent to set aside the conveyance pursuant to the Uniform Fraudulent Conveyance Act. (Civ. Code, § 3439 et seq.) But the trial court ruled that she was barred by the statute of limitations (Code Civ. Proc., § 338, subd. 4) from moving to set aside the conveyance. It then became imperative for the judgment to be issued in the name of someone who could attempt to set aside the alleged fraudulent conveyance. Apparently, Lawrence has no other assets

---

[2]Hereafter, all references to rules are to the California Rules of Court unless otherwise indicated.

which can be levied upon to satisfy the writ of execution. Because the children are not barred by the statute of limitations from attempting to set aside the conveyance,[3] both they and Mary Lou want the writ of execution to issue in their names.

We are thus presented a case in which no issue is tendered concerning the present or future needs of the children, nor any issue concerning the relation of the unpaid support to the children's needs. Indeed, "[t]he basic duty of support exists only during the minority of the child[ren] . . . ." (6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 130, p. 4647.) The children's intervention arises, so far as this record is concerned, solely from their understandable desire to rescue their mother from the misfortunes of the bar of limitations.

### A.

The trial court ruled that the children are not proper parties to the enforcement action because the "cross-complaint" is a "proceeding" pursuant to rule 1212 of the Family Law Act as to which, generally, the only parties are husband and wife. (Cal. Rules of Court, rule 1211.) We disagree. However, for reasons shortly to appear, the children have no standing to enforce the support orders by execution.

The family law rules "apply to every action and proceeding" under the Family Law Act, "and, unless these rules elsewhere explicitly make them applicable, do not apply to any other action or proceeding." (Rule 1205.) The term "proceeding," as used in the rules, "means a proceeding pursuant to the Family Law Act for dissolution of marriage, for nullity of marriage, or for legal separation of the parties." (Rule 1201 (c).) The term "action" is used to refer to other actions contemplated by the Family Law Act, e.g., an action against the parent for support of a child. (Civ. Code § 4703; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 737, pp. 2357-2358.)

Rule 1211 provides: "(a) Except as provided in subdivision (b) or in rules 1250 through 1255, the only persons permitted to be parties to the *proceeding* are the husband and wife." (Italics added.) Because this is not a "proceeding," however, rule 1211 does not apply. Rather, the applicable rule is rule 1207, which provides in part: "In any action

---

[3]The children were minors at time of the conveyance. (Code Civ. Proc., § 352, subd. (a).)

pursuant to the Family Law Act but not otherwise subject to these rules by virtue of subdivision (c) of Rule 1201, including those proceedings authorized by Sections 4600, 4603, and 4703 of the Civil Code, all provisions of law applicable to civil actions generally apply regardless of nomenclature if they would otherwise apply to such actions without reference to this rule ...." (Italics added.)

The "cross-complaint," whatever else it is, is not a proceeding described in rule 1201 (c).

## B.

■ The question remains whether the children may seek a writ of execution in their own names to enforce Lawrence's duty to pay pursuant to past support orders.

■ Civil Code section 4380 provides that a support order may be enforced by execution. That brings into play the provisions of Code of Civil Procedure section 681. "[A] support order, ... may ... be enforced by the ordinary process of levying execution." (6 Witkin, Summary of Cal. Law, *supra*, Parent and Child, § 138, p. 4653.) Accrued support arrearages are treated as a judgment for money (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366 [124 Cal.Rptr. 101]) and a writ of execution issues as a matter of right as the amounts become due and are unpaid (*Hunter v. Hunter* (1959) 170 Cal.App.2d 576, 581 [339 P.2d 247]), subject to equitable considerations (*In re Marriage of Sandy* (1980) 113 Cal.App.3d 724 [169 Cal.Rptr. 747]).

However, the right of execution is limited by section 681[4] to "the party *in whose favor* judgment 'is given ....'" (5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 5, p. 3391.) "The person in whose favor the judgment is entered may have the writ of execution issued. If the judgment is assigned, the assignee is entitled to have the writ issued. [Code Civ. Proc.,] § 385; *Troy v. Troy* (1932) 127 [Cal. App.] 489 ...." (Cal. Debt Collection Practice (Cont.Ed.Bar 1968)

---

[4]Code of Civil Procedure section 681 provides: "The party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment. If, after the entry of the judgment, the issuing of such writ or order is stayed or enjoined by any judgment or order of court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the 10 years within which execution or order may issue."

§ 17.16, p. 376.) Although support orders are in some respects subject to different rules (see 5 Witkin, Cal. Procedure, *supra*, § 9, pp. 3393-3395), these do "not set them apart from other California judgments in terms of enforcement." (*Wyshak* v. *Wyshak* (1977) 70 Cal.App.3d 384, 390 [138 Cal.Rptr. 811]; see also *Dampier* v. *Dampier* (1957) 155 Cal. App.2d 483 [318 P.2d 37].)

 Mary Lou is subject to the bar of a statute of limitations on the theory that she is seeking, not funds for the current support of the children, but reimbursement for funds she has already expended for their support.

### C.

The children nonetheless claim that, as the real parties in interest in a child support order, they are entitled to enforce the orders for past due support. The issue turns, we believe, upon whether the children are the beneficiaries of the arrearages sought by execution.

 Where the purpose of securing the arrearages is reimbursement of a parent for having supported the children, the beneficiary is the parent and not the child. In *Di Corpo* v. *Di Corpo* (1948) 33 Cal.2d 195 [200 P.2d 529], the court affirmed the denial of a writ of execution to enforce a child support order for failure of the divorced wife to diligently locate her ex-husband's property within five years (now ten years [Code Civ. Proc., § 685]) of the judgment. In answer to the argument that the children should not be punished for their mother's lack of diligence, the court said: "Since, however, she has presumably supported the children out of her own funds since 1931, she is seeking, not funds for the current support of the children, but reimbursement for funds she has already expended for their support. (See *Saunders* v. *Simms*, [1920] 183 Cal. 167, 171 [190 P. 806].)" (*Id.*, at p. 200.) In *Saunders*, in similar circumstances, the court rejected the argument that the child was the "real beneficiary" of the arrearages. (See, generally, Annot., 70 A.L.R.2d 1250, 1258, Alimony or Support Order—Action—Time.)

However, where the children are the direct beneficiaries of the support they are the real parties in interest. In *Williams* v. *Williams* (1970) 8 Cal.App.3d 636, 640 [87 Cal.Rptr. 754], it was held: "[T]he [child support] obligation is due to the child rather than the mother. If it be considered a debt it is, in essence, a debt owing to the child since a

father's duty to support his minor children is a continuing obligation 'during the minority of the children of the marriage.' [Citations.] In essence, the parent, to whom such support is paid, is but a mere conduit for the disbursement of the support." (See also *Jackson* v. *Jackson, supra,* 51 Cal.App.3d at p. 367.) In *Kyne* v. *Kyne* (1940) 38 Cal.App.2d 122, 130 [100 P.2d 806], the court held: "[Civil Code] [s]ection 196a requires the father and the mother to support their illegitimate children, and provides that: 'A civil suit to enforce such obligations may be maintained *in behalf of a minor illegitimate child,* by his mother or guardian.' ... Obviously, the infant is the real party in interest. Any support money awarded is for his benefit. Even where the mother appears as plaintiff she is not maintaining the action for herself but 'in behalf of' the child." And in *Wong* v. *Young* (1947) 80 Cal.App.2d 391 [181 P.2d 741], an action was brought by a minor through her mother as guardian ad litem to have the defendant declared her father and to compel him to contribute to the minor's support. Judgment was entered in the minor's favor. On appeal, defendant argued it was error for the trial court to have ordered the support money payable to the mother of the minor child as guardian ad litem. Although rejecting this argument, the court did note: "The defendant correctly points out that the mother is not a necessary party to such an action, that the award is for the minor, and that the minor is the real party in interest. [Citation.]" (*Id.* at p. 394.)

Similarly, in other cases involving a present duty of child support or other rights involving children, the cases have said that the children are the real parties in interest or held that they are proper parties to the action. (*Paxton* v. *Paxton* (1907) 150 Cal. 667, 672 [89 P. 1083] [Civ. Code, § 206]; *Fagan* v. *Fagan* (1941) 43 Cal.App.2d 189, 198 [110 P.2d 520] [Civ. Code, § 203].)

The line dividing these cases was described in *Hunter* v. *Hunter, supra,* 170 Cal.App.2d at page 581, in these words: "A child's right to support cannot be barred by a property settlement agreement between the parents. (*Krog* v. *Krog,* [1948] 32 Cal.2d 812, 817 [198 P.2d 510].) The trial court is not bound by the agreement of the parents and may award more or less than the amount agreed upon by them for child support. (*Beulac* v. *Beulac,* [1948] 84 Cal.App.2d 649, 650-651 [191 P.2d 478].) Upon an application for an award of child support, the trial court may order the father to pay notwithstanding the existence of an agreement by which the mother purported to release the father from all liability for support of their children. (*Allen* v. *Allen,* [1956] 138 Cal.

App.2d 706, 708-709 [292 P.2d 581].) In such an application the mother is enforcing the children's right to support—a right which cannot be limited or abridged by the agreement of the parents. (*Allen* v. *Allen, supra*, 138 Cal.App.2d 706, 709; *Metson* v. *Metson,* [1942] 56 Cal. App.2d 328, 332 [132 P.2d 513].) In such cases the determinative questions before the trial court are the needs of the children and the ability of the parent to pay. (*Gilbert* v. *Gilbert,* [1950] 98 Cal.App.2d 444, 446 [220 P.2d 573]; cf. *Pencovic* v. *Pencovic,* [1955] 45 Cal.2d 97, 100 [287 P.2d 501].) [¶] However, these settled principles have no application where, as in the instant case, the mother is attempting *on her own account* to execute on an order for support contained in a judgment of divorce. An order for support '. . . may be enforced by execution in the same manner as if it were a judgment.' (Code Civ. Proc., § 1007; see Code Civ. Proc., § 681.) A judgment of divorce providing for support payments is a judgment payable in future installments (*Cochrane* v. *Cochrane,* [1943] 57 Cal.App.2d 937, 939 [135 P.2d 714]) and a writ of execution will issue as a matter of right as the amounts become due and are unpaid. (*Lohman* v. *Lohman,* [1946] 29 Cal.2d 144, 150 [173 P.2d 657]; see 19 Cal.Jur.2d 317, § 5.) When the writ issues the burden is on the judgment debtor to establish facts justifying an order quashing the writ. *Lohman* v. *Lohman, supra,* 29 Cal.2d 144, 150; cf. *Wolfe* v. *Wolfe,* [1947] 30 Cal.2d 1, 5 [180 P.2d 345]; *Parker* v. *Parker,* 203 Cal. 787, 793-794 [266 P. 283].)"

The courts have presumed that where the action is for *accrued* child support, it is one for reimbursement to the "custodial" parent, notwithstanding the fact that the award itself may have been for the benefit of the child. We do not reach the question under what conditions the children might be deemed the beneficiaries of arrearages in child support. No such claim has here been made. Similarly, we do not decide how to resolve a dispute between parent and child as to entitlement to arrearages.

Since Mary Lou is the apparent beneficiary of the children's attempt to secure execution in their names, they are not the real parties in interest in the execution action. Accordingly, the children have no right to levy execution in the absence of having acquired a right to such a judgment.[5]

---

[5]An assignment, if possible (see *Dampier* v. *Dampier* (1957) 155 Cal.App.2d 483 [318 P.2d 37]), would place them in no better position than their mother.

## D.

This brings us to the children's argument that they have an independent action for support under Civil Code section 4703, which would encompass a claim for the arrearages. We disagree.

Civil Code section 4703,[6] provides that either a parent or the child by his guardian ad litem may bring an action against an errant parent for support. The children argue that once they reach the age of majority there is no reason why an action to enforce the duty to support must be brought by a guardian ad litem—that they should be allowed to bring the action in their own name and in their own right.

The short answer to this claim is that an independent action, even if it can be maintained, gives the children no rights in a preexisting judgment.

## II

■ Mary Lou asserts the trial court erred in refusing to enforce child support arrearages which accrued to Lawrence, Jr. (one of the four children) to the date Lawrence filed his motion for modification for child support.

In its order dated March 20, 1981, the court made the following finding: "That LAWRENCE UTIGARD [Jr.] became emancipated by induction into the United States Air Force on or about January 27, 1979, and that as of that date, he became fully self-supporting and emancipated and no longer financially dependent upon [Mary Lou], and, [Lawrence's] obligation for child support from and after February 1, 1979 for LAWRENCE [JR.] shall not be enforceable by [Mary Lou] by writ of execution or otherwise."

Mary Lou correctly asserts the mere fact that Lawrence, Jr., enlisted in the armed forces does not constitute emancipation as to relieve Lawrence from the court's previous order requiring him to pay child support. (See *Argonaut Ins. Exchange* v. *Kates* (1955) 137 Cal.App.2d

---

[6]Civil Code section 4703 provides: "When a parent has the duty to provide for the support, maintenance, or education of his child and willfully fails to so provide, either parent, or the child by his guardian ad litem, may bring an action in the superior court against the errant parent for the support, maintenance, or education of the child."

158, 167 [289 P.2d 801].) She is equally correct that Civil Code section 4700, subdivision (a), prohibits any retroactive modification or revocation of accrued support. Here, however, the court did not modify the previous order of support, but merely engaged in "a proper exercise of the court's equitable discretion regarding its *enforcement* by execution. The court had equitable discretion to determine whether and to what extent the original support provision should be enforced by execution. [Citations.]" (Fn. omitted.) (Italics added.) (*In re Marriage of Sandy, supra,* 113 Cal.App.3d at p. 728.)

Recognizing the court's equitable discretion in this regard, Mary Lou contends the court abused its discretion in refusing to enforce the amount in arrears commencing from the time Lawrence, Jr., entered the armed forces. We disagree. Because Mary Lou has chosen to prosecute the instant action solely on the clerk's transcript, "every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it. [Citation.]" (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537]; see also *Skoglie* v. *Crumley* (1972) 26 Cal.App.3d 294, 298 [103 Cal.Rptr. 205].) Here, both Mary Lou and Lawrence testified at the hearing on the various motions. Without benefit of a reporter's transcript, however, this court is in no position to assert that the trial court, in balancing the equities presented before it, abused its discretion in making its order.

### III

Mary Lou asserts the court erred in granting Lawrence credit for support payments which were not made in strict compliance with previous order of the court. Lawrence was ordered to make the support payments to the San Mateo Health and Welfare Department. While he did not make any of the required payments, he did give $800 directly to Mary Lou. Mary Lou argues payments made in contravention of the court's order should not be credited to Lawrence. We disagree.

The question whether a parent providing support contrary to the provisions of a court order should be granted credit for the same is one within the sound discretion of the trial court. (*Spivey* v. *Furtado* (1966) 242 Cal.App.2d 259, 265 [51 Cal.Rptr. 362]; see *In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 976, 980-981 [149 Cal.Rptr. 108].) Here, there is nothing in the record to indicate Mary Lou ever

objected to the direct payment of child support. (See *Spivey* v. *Furtado, supra,* 242 Cal.App.2d at p. 266.) Nor is there anything to suggest that Lawrence made such payments for the purpose of trying to gain some sort of control over his children. (Cf. *ibid.*) Because of the sparse record before us, this court is in no position to assert the trial court abused its discretion in granting credit to Lawrence for the payments.

## IV

■ Finally, Mary Lou contends the trial court erred in "cancelling" child support payments which were found to have been reinstated. This assertion is misplaced.

In early 1975, Lawrence moved for a modification of the original order for support. Thereafter, the trial court suspended all support payments commencing March 1976. Upon its order of modification of support, the trial court ordered such payments to resume beginning September 1976. The order made no provision for reinstatement concerning those payments which were suspended.

The order of modification of child support was appealable as an order after final judgment. (Code Civ. Proc., § 904.1, subd. (b).) No appeal was taken from that order, however, and thus Mary Lou is in no position to assert the court erred in refusing to retroactively reinstate payments which had been ordered suspended.

The judgment is affirmed.

Reynoso, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied December 21, 1981, and the petition of appellant children for a hearing by the Supreme Court was denied February 17, 1982.