Filed 8/28/13  Marriage of Kahdeman CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of RICHARD J. and DIANE CLARE KAHDEMAN. | 2d Civil No. B243812 (Super. Ct. No. SD 011277) (Ventura County) |
| RICHARD J. KAHDEMAN,    Appellant, v. DIANE CLARE KAHDEMAN,    Respondent. | |

In 1993 appellant Richard J. Kahdeman and respondent Diane Clare Kahdeman ended their marriage.  A decade later they returned to court to resolve their respective interests in Richard's Wells Fargo Retirement Annuity (Annuity).[1]  The trial court awarded each party a 50 percent interest in the Annuity and left it to the parties to resolve the language of a qualified domestic relations order (QDRO) consistent with the court's findings and order.  They could not agree on the language.  Without notice to either Diane or the court, Richard waived any survivor benefits in the Annuity and began

_____

[1] "As is customary in family law proceedings, we refer to the parties by their first names for purposes of clarity and not out of disrespect.  [Citations.]" (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

to collect not only his but also Diane's share of the benefits. In the litigation that followed, the trial court ordered Richard to pay $3,000 in attorney fees.

Richard contends on appeal that the award was unlawful because he owed no fiduciary duty to Diane.[2] It appears from the record, however, that the award was made under Family Code section 271[3] as a sanction for Richard's uncooperative conduct, and not as a remedy for his breach of fiduciary duty. In any event, Richard has failed to provide us with an adequate record to assess whether the trial court abused its discretion in awarding fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The parties' marriage was dissolved in 1993. In July 2003, the trial court awarded each party a 50 percent interest in the Annuity. The order stated: "A [QDRO] for its equal division is to be obtained including each party's respective rights to any and all survivorship benefits as to their respective share of the [A]nnuity. . . . It is the intention of the Court in this order that the [A]nnuity be divided into two separate annuities with each party receiving their respective interest including their respective survivorship rights as their sole and separate property . . . ." The order further provided that in the event the Annuity is not subject to such division, "[t]he Court retains jurisdiction over said [A]nnuity and its division for purposes of enforcement, including but not limited to, the respective survivorship rights of each party on said [A]nnuity."

Notwithstanding the order, the parties could not agree on whether "survivor benefits" are available under the Annuity contract. Diane claimed she was entitled to receive surviving spouse benefits after Richard's death and to transfer her 50 percent share of the Annuity by testamentary transfer after her death. Richard asserted that she had no such rights under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.) and California law. Diane refused to sign Richard's proposed QDRO denying her survivor benefits and Richard refused to sign Diane's proposed

---

[2] Though he is an attorney, Richard appears in propria persona.

[3] All undesignated statutory references are to the Family Code.

2

QDRO including survivor benefits.  According to Diane, the Annuity's administrator, Metropolitan Life Insurance Company (MetLife), preapproved her version of the QDRO.

In March 2012, Richard unilaterally resolved the impasse by placing the Annuity on "pay status" and electing to waive the survivor benefit entirely.  Diane's counsel discovered this fact from a MetLife representative on May 3, 2012.  By that time, Richard had received a $43,023.09 initial lump sum payment.

Richard filed an order to show cause (OSC) requesting that the trial court approve a QDRO that did not include survivor benefits.  He declared that he was taking distributions from the Annuity and "immediately" sending Diane her portion of the payments.  He stated:  "I cannot continue to be burdened with this simply because [Diane] wants to include inappropriate and unapproved language in what is otherwise a valid and binding document."  Diane did not receive any such payments from Richard.[4]

Diane filed an OSC seeking an order requiring Richard to cooperate in the preparation of a QDRO consistent with the trial court's July 2003 order.  Diane asserted that Richard's "conclusion that ERISA is applicable and controlling is contradicted by the representative of the [Annuity] Plan," and that his "election to begin receiving benefits also complicates the matter because we have no idea at this point whether the Plan will accept a QDRO . . . which is inconsistent with the elections he may have made."  Noting that these issues should have been resolved before Richard started taking benefits and that his "correspondence evidences a didactic tenor totally inconsistent with the mandates of . . . section 271," Diane requested $3,050 in attorney fees "to compensate [her] for the further inquiries his perspectives have necessitated."  Diane also sought damages under section 1101 based on Richard's purported breach of fiduciary duties.

The trial court held "a lengthy hearing" on August 10, 2012.  No court reporter was present.  The trial court approved Richard's proposed QDRO.  Finding that Richard had not sent any payments to Diane, the court ordered him to pay Diane 50

---

**4** At oral argument, Richard represented that he told the trial court at the August 10, 2012, hearing that the statement that he was "immediately" sending payments to Diane was a clerical error and that the trial court accepted his explanation.  Confirmation of this assertion cannot be made based on the record appellant has provided.

percent of the funds already received from the Annuity, plus 50 percent of any future payments until the QDRO goes into effect. The court further ordered Richard to pay to Diane's counsel "the sum of $3,000 as and for attorney's fees." Richard appeals that award.

DISCUSSION

Richard contends the trial court erred by requiring him to pay attorney fees as a remedy for breach of fiduciary duty under section 721, 1100 or 1101. Section 1101, subdivision (g), provides that "[r]emedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs." Richard asserts he owed no fiduciary duty to Diane because she chose "to deal with [Richard] at arm's length concerning the Annuity with the assistance of counsel."

Noting that her OSC requested attorney fees under sections 270, 271 and 2030, Diane contends the trial court made the award under section 271. Section 271 provides that "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." Section 271 is not a specific remedy for breach of fiduciary duty under the Family Code, but rather a "sanction for uncooperative conduct that frustrates settlement and increases litigation costs." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 290; see *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 587-588 [awarding sanctions under section 2107 for breach of fiduciary duties of disclosure *plus* sanctions under section 271 for uncooperative conduct]; *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1495 [section 271 sanctions may be appropriate during the course of litigation "to encourage better behavior as the litigation progresses"].) Diane contends the trial court sanctioned Richard under

4

this section because he had made irrevocable elections with respect to the Annuity and had started taking benefits without informing her.

Our review is constrained because we do not have a reporter's transcript or settled statement of the hearing in which the fees were awarded. The appellant's appendix provided by Richard reveals that Diane requested fees of $3,050 because the Annuity "issues could have been, and should have been worked out by [Richard] before this point," and because his "correspondence evidences a didactic tenor totally inconsistent with the mandates of . . . *section 271*." (Italics added.) Richard does not acknowledge this specific request for $3,050 in fees or make any reference to section 271 in his briefs. He simply asks us to assume the $3,000 award was related to a finding of breach of fiduciary duty under section 721, 1100 or 1101. Nothing that Richard has provided justifies that assumption, particularly since the trial court's order explicitly continued the hearing on Diane's claims for "alleged breach of fiduciary duty." The only logical inference from the limited record presented is that the trial court imposed the fees as a sanction under section 271.

*Incomplete Record on Appeal*

We review a sanctions order under section 271 for abuse of discretion. (*In re Marriage of Feldman, supra,* 153 Cal.App.4th at p. 1478.) "'. . . Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. . . .'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) "As the party challenging a fee award, [Richard] has an affirmative obligation to provide an adequate record so that we may assess whether the trial court abused its discretion." (*Vo v. Las Virgenes Municipal Water Dist*. (2000) 79 Cal.App.4th 440, 447; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.) He has not met this burden.

Richard chose to proceed with this appeal based on an appendix comprised of selected documents of his own choosing. No reporter's transcript was provided because neither party employed a court reporter to record the "lengthy hearing" during which the fee award was made. Richard also did not seek the preparation of a settled statement to assist this court. (See *Leslie v. Roe* (1974) 41 Cal.App.3d 104, 108; Cal.

5

Rules of Court, rules 8.134 & 8.137.)  When the record on appeal consists entirely of a clerk's transcript or appellant's appendix, the scope of review is limited.  (*In re Marriage of Stutz* (1981) 126 Cal.App.3d 1038, 1042.)  Every presumption is in favor of the trial court's order.  (*Ibid.*)  We cannot substitute our deductions for the reasonable deductions drawn by the trial court, and the evidence is not subject to evidentiary challenges.  (*Ibid.*; *In re Marriage of Utigard* (1981) 126 Cal.App.3d 133, 145; *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.)  We must presume that the trial court's order is supported by matters that are not before us.  (*Marriage of Stutz,* at p. 1042; see *Marriage of Utigard*, at p. 145 ["Without benefit of a reporter's transcript, . . . this court is in no position to assert that the trial court, in balancing the equities presented before it, abused its discretion"]; *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [upholding sanctions where appellant failed to provide "a record that explains the reasoning of the court that imposed the sanctions"]; see *Foust v. San Jose Const. Co., Inc.* (2011) 198 Cal.App.4th 181, 186-187 [listing cases in which appellate court refused to reach merits of appeal because no reporter's transcript or suitable substitute was provided].)

Even on the limited record presented, Richard has not demonstrated an abuse of discretion.  The trial court's July 2003 order divided the Annuity "into two separate annuities with each party receiving their respective interest including their respective survivorship rights as their sole and separate property."  Without any prior notice, Richard irrevocably waived survivor benefits in the Annuity and started collecting Diane's share of the benefits.  Not only were these actions contrary to the court's prior order, but they also increased litigation costs by forcing Diane to file an OSC to recover her share of the benefits collected by Richard and to investigate the effect of Richard's waiver of the survivor benefits.  (See § 271; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.)  There is nothing to suggest that the $3,000 fee award

6

"exceed[ed] the bounds of reason."  (*Denham v. Superior Court, supra,* 2 Cal.3d at p. 566.)

DISPOSITION

The judgment is affirmed.  Diane is awarded costs on appeal.  Her request for attorney fees on appeal is denied.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

William Q. Liebmann, Judge

Superior Court County of Ventura

_____

Richard J. Kahdeman, in pro. per., for Appellant.

Law Office of Michael J. Smith and Michael J. Smith for Respondent.