[Civ. No. 33421. Second Dist., Div. Five. Mar. 20, 1970.]

AUDREY M. MARTIN, Plaintiff and Respondent, v.
THEODORE K. MARTIN, Defendant and Appellant.

**COUNSEL**

Thomas S. Bunn, Jr., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

**OPINION**

**REPPY, J.—**

### PROCEDURAL BACKGROUND

On October 14, 1964, the Superior Court of Los Angeles County granted a divorce decree between the parties. It provided that defendant-husband

(hereinafter, defendant) should pay to plaintiff-wife (hereinafter, plaintiff) as alimony "a sum equal to seventeen and one-half per cent (17½ %) of defendant's gross taxable income from July 1, 1964, through June 30, 1969 . . . to be calculated and paid quarterly . . ."; and that defendant "is to make available to plaintiff . . . all of his books and records for reasonable inspection, and provide plaintiff with copies of his . . . income tax returns . . . ."

On December 12, 1967, plaintiff gave to defendant proper and timely notice that on December 21, 1967, she would move the court for an order directing issuance of a writ of execution, reciting that since the judgment was in percentage terms, a determination of the amount due was required before execution could issue. At the same time, plaintiff served on defendant, and filed for use as evidence at the motion-hearing, the declaration of her attorney which set forth the alimony provision in the decree, the information that plaintiff had not remarried,[1] and the substance of written communications which defendant had sent to plaintiff's prior attorney giving defendant's gross taxable income, a letter with a schedule of business income and expense as to the last two quarters of 1964 and his income tax returns for 1965 and 1966. Additionally, the attorney's declaration set out figures for defendant's gross taxable income for the first three quarters of 1967 by assuming that defendant's income for that year (because the other data showed a pattern of acceleration of income) was at least what it had been in 1966.

The declaration computed the 17½ percent of the total gross taxable income for the periods involved, showed what payments defendant had made, and computed interest claimed to be due on the delinquency.

A memorandum of points and authorities accompanied the declaration, citing cases for the proposition that the motion procedure was a proper method for having the court determine the amount of alimony paid so that a writ of execution could issue therefor for the arrearage therein.

On December 21, 1967, plaintiff's motion was heard by the court. It is clear that defendant was authorized by the court to file counter evidential material by way of affidavit or declaration and to submit counter points and authorities and that plaintiff was permitted to file closing points and authorities, and that the matter then was to stand submitted.

On January 4, 1968, defendant submitted his declaration in opposition to the motion and a memorandum of points and authorities in opposition thereto. In his declaration, defendant averred that he had remarried on

---

[1]This was attacked as hearsay. However, it was a circumstance easily verified and there was no motion to strike. (See discussion, *infra.*)

September 30, 1965; that he was an attorney and that his primary source of income was from his law practice; that his new wife was his secretary and "[had] been paid for her services as secretary only by her community property share in . . . [his] earnings." He further averred that on October 24, 1967, his attorney had advised plaintiffs' attorney in a letter that he offered to make available all of defendant's books and records for reasonable inspection. In his points and authorities, defendant's counsel suggested that the only proper way for plaintiff to have initiated a hearing to determine the amount for which execution might issue was for plaintiff to have had issued and served an order to show cause re modification of judgment or re an accounting, inferentially suggesting that a hearing of plaintiff's motion for an order directing issuance of a writ of execution was not an appropriate procedural vehicle for such a determination. Defendant further urged that the meaning of the term "gross taxable income" had to be determined and that the question had to be answered whether the new wife's community share in defendant's personal service earnings was a part of defendant's gross taxable income. Finally, defendant contended that it was not proper to establish the amounts due by "hearsay on hearsay" and by assumption—referring to the declaration of plaintiff's attorney.

On January 3, 1968, plaintiff filed closing points and authorities, in them citing authority for the proposition that community property, including a wife's interest is available to premarital creditors, including a prior wife.

On January 4, 1968, the trial court, reciting that the matter had been submitted by counsel for the parties on moving documents and memorandums, made the order that the "motion of plaintiff for order to direct issuance of a Writ of Execution is granted." The intendment of this order clearly is that the writ of execution would issue in the amount of principal plus interest set out in the declaration of plaintiff's attorney. Presumably, a writ of execution was issued in such an amount.

On January 31, 1968, defendant noticed for hearing on February 9, 1968, a motion to quash the writ of execution. On the latter date the motion to quash was argued and denied, and notice of the ruling given.

On February 13, 1968, defendant executed and on February 14, 1968, filed a notice of appeal which stated that defendant was appealing from the order granting the motion for issuance of a writ of execution and from the order denying the motion to quash the writ of execution. Both appeals, of course, involve the very same problems.

## CONTENTS

On appeal defendant contends (1) that the trial court did not have jurisdiction to issue a writ of execution because the divorce decree did not

provide for the payment of a specific sum; (2) that (assuming there was jurisdiction to determine the amount) defendant did not have a proper hearing for such determination; (3) that the trial court did not examine into the meaning of the term "gross taxable income"; and (4) that the evidence of plaintiff on the issue of the amount due under the percentage provision of the divorce decree was inadmissible.

## DISCUSSION

■ The trial court did have jurisdiction to determine the amount due under the percentage of gross taxable income provision of the divorce decree and, upon having made such a determination, to issue a writ of execution. (*Wolfe* v. *Wolfe,* 30 Cal.2d 1, 3 [180 P.2d 345]; *Lane* v. *Bradley,* 171 Cal.App.2d 27, 30-31 [339 P.2d 583].) Defendant practically concedes this principle in his opening brief when he states that: "Although . . . the . . . [divorce] Decree is for the payment of money to a specific person . . . [plaintiff], the amount of money due is not specified . . . and cannot be determined with exactness in the absence of a hearing at which evidence can be presented and both parties can be heard."

■■ This leads to defendant's second point. As to it we hold that a noticed motion for an order directing issuance of a writ of execution is a procedural vehicle which affords the potential judgment debtor under an installment or percentage of income-type alimony decree an adequate hearing in which to resist factually and legally the relief sought by the movant. (Cf. former Civ. Code, § 137.3; see *Parker* v. *Parker,* 203 Cal. 787, 793 [266 P. 283], and cases cited therein; see also Cal. Remedies for Unsecured Creditors (Cont. Ed. Bar, 1957), p. 162.) Ordinarily, the factual aspect of such an issue is presented through the medium of affidavits or declarations under the penalty of perjury, as was done in this case. (*Fuller* v. *Lindenbaum,* 29 Cal.App.2d 227, 230 [84 P.2d 155]; 34 Cal.Jur.2d, Motions, Rules, Etc., § 12, p. 514; 2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, § 10, p. 1648.) It is within the discretion of the trial court to receive in-court testimony at the request of a party or on its own motion if it feels that doing so will aid it in resolving the issue before it. (*Perez* v. *Perez,* 111 Cal.App.2d 827, 828-829 [245 P.2d 344].)

Defendant was given, and availed himself of, the opportunity to submit counter factual material by way of declarations. Defendant made no direct request to the court to submit oral testimony or other documentary evidence. Only tangentially did defendant make such a request by urging that an order-to-show-cause-type of hearing should have been provided.

■ A retraction of the execution motion hearing and initiation of an order to show cause hearing was not necessary to have allowed the trial

court to receive testimony and evidence by means other than through declarations and counterdeclarations if it had so desired. The trial court did not have to accede to a request to take such other type evidence. To decline to do so would be error only if it could be established that it amounted to a breach of discretion. There is nothing in the instant case to indicate that there was such a breach. Under this topic defendant has urged that the judgment itself had to be modified as of a given date to show an exact amount due. We do not agree with this viewpoint. He has also urged that if a modification was not required, at least a conventional accounting proceeding was. A contested, adversary hearing on a motion for issuance of writ of execution in a case of this nature in essence assumes the proportions of such an accounting. The extent of it depends upon the detail of the evidence presented.

Impliedly, when the trial court granted the motion of plaintiff for an order directing a writ of execution to issue, bearing in mind that the parties had presented counter positions on at least the legal aspect of the meaning of the term "gross taxable income," it did determine the meaning of that terminology. Its implied characterization is that "gross taxable income," from the standpoint of the divorce decree, is that income of the husband which is subject to legal process for enforcement of defendant's debts and that after his remarriage this would include his income from his law practice and national guard service, even though his new wife had a community interest in it. (See *Weinberg* v. *Weinberg,* 67 Cal.2d 557, 562 [63 Cal.Rptr. 13, 432 P.2d 709].)

However, defendant, through his declaration, sought to induce the trial court to accept the proposition that defendant's gross taxable income was not correctly calculated until one-half of his net earnings from his personal services were deducted on the basis that this was what he considered as compensation to his new wife for her legal secretarial services. Impliedly, the trial court rejected this factual claim, either disbelieving that the new wife rendered such secretarial services or classifying what secretarial services she did render in the same category as homekeeping services, simply an adjunct of her conjugal status. It is significant that defendant did not include in his counterdeclaration any evidential material in support of a claim that the parties intended something different by their use of the terminology "gross taxable income," particularly with respect to what its application should be to the circumstances of remarriage of defendant. It was defendant's own fault that he did not take greater advantage of the opportunity to present counter evidence to the court by way of declarations. It is further significant that the declaration of defendant establishes that his new wife did not have any income by way of specific wage payments for personal services from a third party which could have been included in the

gross taxable income figure on the income tax return which had been utilized by plaintiff for the purpose of presenting evidence to the court.

■ The true objection to the plaintiff's evidence of defendant's gross taxable income from the last half of 1964 and for the years 1965 and 1966 is not so much that it is hearsay[2] but that it is not the best evidence. Defendant did not make a positive objection to the receipt of the declaration of plaintiff's attorney because of the best evidence or hearsay contention. Nor did he move to strike that part of the declaration. It was not sufficient simply to characterize the material as hearsay in his counter points and authorities. In effect, what defendant did was not object to the admission of the statements, or move to strike them, but, rather, to argue to the trial judge that because of its technical evidential deficiencies, the affidavit should be given little weight. This does not circumvent the rule that a firm and specifically articulated objection or motion to strike is necessary to preserve such error, if any, on appeal. As the Court of Appeal stated in *Soares* v. *Ghisletta*, 1 Cal.App.2d 402, 404 [36 P.2d 668], "It may be conceded that the affidavits were incompetent to prove the facts mentioned (Code Civ. Proc., § 2009), but if such affidavits were admitted without any objection *or without proper objection,* appellants may not now raise the point." (Italics added.) (See also *Vogan* v. *McLaughlin,* 172 Cal.App.2d 65, 72 [342 P.2d 18].)

■■ Defendant points to the circumstance that plaintiff's attorney, in his declaration, did not attach and incorporate copies of the schedule of income and business expenses appended to defendant's letter of September 8, 1966, or copies of his income tax return for 1965 and 1966, and to the circumstances that the originals were not offered in evidence at the hearing. In motion hearings of this nature, where affidavit-type proof is appropriate, the presentation of the vital substance of a financial document which originated with the opponent, who obviously would possess a copy of it (cf. *Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 128-129 [264 P.2d 626], overruled on another point in *See* v. *See,* 64 Cal.2d 778, 785-786 [51 Cal.Rptr. 888, 415 P.2d 776]), may be received in evidence and given weight by the trial judge despite the fact that it would not be the best evidence of defendant's admission of his gross taxable income disclosed in the documents he sent to plaintiff's former attorney.[3]

---

[2]See Witkin, California Evidence (2d ed. 1966) The Hearsay Rule, § 628, p. 588.

[3]As Professor McCormick notes: "There is much evidence . . . such as reliable affidavits or copies of writings. which though incompetent under the technical exclusionary rules, may be valuable in the particular situation and which the trial judge in the absence of objection would not be justified in excluding. It is only when the evidence is irrelevant. unreliable, misleading, or prejudicial, as well as incompetent, that the judge should exercise his discretionary power to intervene." (McCormick, Evidence (1954) Admission and Exclusion, § 55, p. 130.)

From the latter standpoint in the instant case it would make no difference whether plaintiff herself made the declarations as to what was the content of the financial documents which she had observed or her attorney made the declarations from his personal observations. It is inferable here that the attorney did make a personal observation, since he points out in his declaration that the material was furnished by defendant to plaintiff's prior counsel. It was a fair inference that the documents got ino the new attorney's legal files. It is significant that the defendant himself utilized this method of presenting evidence for the motion hearing. In his declaration, he referred to and quoted from a letter which his attorney had addressed to plaintiff's attorney in which the offer was made to make books and records available for inspection. It is also to be noted that in the declaration of plaintiff's attorney, the schedule of income and business expenses for the last half of 1964 was quoted from. Finally, it is significant that defendant did not in any way counter the monetary information included in the moving declaration and asserted to be taken from the financial document submitted by defendant. We cannot say that the trial court erred in utilizing the evidential material submitted in the declaration of plaintiff's counsel and in not ruling that it was inadmissible.

For the first three quarters of 1967, the point up to which computations as to amounts due were being made, the declaration of the attorney averred that defendant had not furnished his books and records; that it seemed a reasonable assumption that defendant's 1967 income was not less than his 1966 income, because since 1964 his income had been escalating. Consequently, 75 percent of the defendant's gross taxable income for 1966 was taken as his gross taxable income for the first three quarters of 1967. It might be argued that defendant, by not countering the projected estimate as to his gross taxable income for the first three quarters of 1967, acceded to its accuracy. However, we feel that defendant was entitled to rely on the inadequacy of the moving proof, particularly in light of the circumstance that defendant challenged this method of "proof by assumption" and made the statement in his own declaration, which was not countered by plaintiff, that he had offered his books and records for inspection by plaintiff in October 1967. Consequently, we conclude that it was not proper for the trial court to take into consideration the alleged gross taxable income for the first three quarters of 1967 in determining the amount for which a writ of execution should issue. It is therefore necessary to instruct the trial court to modify its order directing issuance of writ of execution.

Moreover, plaintiff utilized an incorrect method of computation of the amount of alimony due for the period from July 1, 1964, through December 31, 1966. Taking the totals of gross taxable income for the entire

period, multiplying them by 17½ percent, and then deducting the total of payments made by defendant over the entire period did not give an accurate result. We have made a recomputation as follows:

For the second half of 1964: Gross taxable income, $1,203.63. 17½ percent thereof: $210.61. Amount paid by defendant during this time: $297.15. Overpayment: $86.54.[4]

For 1965: Gross taxable income, $4,824.67. 17½ percent thereof: $844.31. Amount paid by defendant: $1,096.73 plus $86.54 prior overpayment amounts to $1,183.27. Overpayment: $338.96.

For 1966: Gross taxable income, $8,859.65. 17½ percent thereof: $1,552.53. Amount paid by defendant: $100 plus $338.96 prior overpayment, or $438.96. Balance due: $1,113.57.

■ Although the divorce decree provides that the payments should be quarterly and ordinarily interest would run from the date when the quarterly payments became due (Civ. Code, § 3287), plaintiff presented no evidence to indicate what each quarterly gross taxable income might have been. Plaintiff provided only total figures for the end of each year. It would not be proper to divide this total into quarters, since the actual income for any given quarter might have been more or less than this average. Thus, for the purposes of the writ of execution sought by plaintiff in this proceeding, it is proper to compute interest only with respect to the sum found to be due at the end of each year.

No amount was due from defendant to plaintiff in 1964 or 1965, there being overages in each instance. Therefore, simple interest should run only on the amount due as of the end of 1966, which should be computed by the trial judge from January 1, 1967 to the time when he modifies the writ of execution in the proper principal amount.

As indicated, the trial court did not have adequate information before it to include in its order directing a writ of execution an amount for the year 1967. If plaintiff should desire to secure issuance of a writ of execution for 1967 (and now it would be logical to include 1968 and 1969, up through June 20, when alimony terminated), plaintiff should institute a new proceeding.

We do not condone the nonappearance of plaintiff in this appeal. However, we felt that an impartial analysis and determination of the issues by

---

[4]We make no determination whether the overpayment is a gift and not a credit against future payments. This should be determined in an appropriate and more extensive proceeding. However, it seems fair in the discretionary allowance of a writ of execution to handle it as here indicated.

this court was due the trial court which handled the matter before it with proper deliberation and judicial concern.

The order is affirmed insofar as it determines that plaintiff is entitled to have her motion for the issuance of the writ of execution granted. It is reversed and remanded to the superior court insofar as the amount for the writ is concerned, and that court is instructed to modify its order of January 4, 1968, to direct issuance of the writ of execution for the principal sum of $1,113.57 plus simple interest as computed. Each side is to bear its own costs on this appeal.

Stephens, Acting P. J., and Aiso, J., concurred.