[Civ. No. 18686. Third Dist. Dec. 8, 1980.]

In re the Marriage of HILMA M. and JAMES C. SANDY.
HILMA M. SANDY, Respondent, v.
JAMES C. SANDY, Appellant.

---

**COUNSEL**

Elliot K. Sevier for Appellant.

Russell, Jarvis, Estabrook & Dashiell and Robert W. Jarvis for Respondent.

---

**OPINION**

**BLEASE, J.**—James C. Sandy (James) appeals from an order denying his motion to quash a writ of execution obtained by Hilma M. Sandy (Hilma) to enforce a March 1, 1977, order "confirming" his obligation to pay spousal support. He collaterally attacks the March 1 order as an invalid retroactive modification of his support obligation contained in the final decree of dissolution dated May 6, 1974. He also attacks the final decree as in violation of federal law relating to military retirement pay. We affirm the order.

### FACTS

The final decree of dissolution of the Sandy marriage awarded custody of the Sandys' minor son to Hilma, prescribed the division of property and ordered "[t]hat [James] continue to pay [Hilma] his [military] retirement check as spousal and child support." No provision was made segregating the amount between Hilma and their son.

At the time of the support order James' military retirement check amounted to $600 per month. It periodically increased. From the date of their separation until December 1973 his check was sent directly to a joint bank account maintained by the parties.

In October of 1973 the Sandys' son became 18. James did not seek a modification of the support order contained in the final decree; rather,

he began receiving the checks directly and unilaterally sought to reduce his support payments to $175. Hilma objected and they agreed that he would send her $400 per month. The retirement check had by then risen to $819. James carried out the agreement until August of 1974 when he stopped making payments.

Hilma sought at various times to enforce the support obligation. On February 10, 1976, and again on March 1, 1977, the superior court "*confirmed*" James' obligation to pay spousal support in the amount of $400 per month from January 1, 1974, in connection with enforcement of the support order.

The writ of execution here was issued on September 6, 1978, based upon the March 1, 1977, order in the amount of $11,057.45 principal, $971.22 interest and $4 costs, and was served upon the commanding officer of the Air Force accounting and finance center in Denver, Colorado. On April 5, 1979, James' motion to quash the writ of execution was denied. He appeals.

I

James argues that the superior court lacked jurisdiction to issue the order of March 1, 1977, "confirm[ing]" his obligation to pay spousal support in the amount of $400 per month from January 1, 1974, since it amounted to an impermissible retroactive modification (insofar as it related to payments due before January 11, 1977, the date the motion was filed) of the support provision adopted in the final decree of dissolution—i.e., that he "pay [respondent] his retirement check" each month. (Civ. Code, §§ 4700, subd. (a)[1]; 4801, subd. (a).[2])

If the March 1, 1977, order were actually a *modification* of the original support order it might be attacked collaterally as in excess of the court's jurisdiction. (Cf. *Vasquez v. Vasquez* (1952) 109 Cal.App.2d 280, 283 [240 P.2d 319].)

---

[1]Civil Code section 4700, subdivision (a), provides in pertinent part: "Any order for child support may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke...."

[2]Civil Code section 4801, subdivision (a), provides in pertinent part: "Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke...."

■ ■■■ Contrary to James' arguments, no modification of the original support order was required to make it enforceable, and the specification of a different sum in the order of March 1 was not a "modification" of the fundamental support obligation, but merely a proper exercise of the court's equitable discretion regarding its *enforcement* by execution.[3] The court had equitable discretion to determine whether and to what extent the original support provision should be enforced by execution. (*Messenger v. Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988]; *Hale v. Hale* (1935) 6 Cal.App.2d 661, 663-664 [45 P.2d 246]; *Anderson v. Anderson* (1954) 129 Cal.App.2d 403, 406, 411 [276 P.2d 862]; Civ. Code, § 4380.[4])

■ The original support order did not provide for a reduction of support upon the child's attainment of majority. Consequently, it was up to James to do so. (*Hale v. Hale, supra*, 6 Cal.App.2d at pp. 663-664.) Despite his dereliction in this regard, the court could still, and evidently did, consider whether there were equitable reasons for refusing to enforce his obligation in its entirety. (*Ibid.; Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 368 [124 Cal.Rptr. 101] [husband stopped paying support when child came to live with him; court should have exercised equitable discretion to determine whether execution was

---

[3]James attacks the original support order as invalid for uncertainty. It is not. Although Code of Civil Procedure section 577.5 provides that "[i]n any judgment, or execution upon such judgment, the amount shall be computed and stated in dollars and cents, . . ." a judgment possesses the requisite *certainty*, which is the clear aim of the statute, if the amount, though not so expressed, is definitely ascertainable. In such situations, courts have applied the legal axiom, codified in Civil Code section 3538, that "[t]hat [is] certain which [can be] made certain." (*Lufkin v. Lufkin* (1930) 209 Cal. 710, 714, 716 [209 P. 8] [support order directing parents to share equally the cost of sending child to boarding school]; *Pinecrest Productions, Inc. v. RKO Teleradio Pictures, Inc.* (1970) 14 Cal.App.3d 6, 13 [92 Cal.Rptr. 44] [execution permitted on a judgment referring to accounting documents in the record]; *Martin v. Martin* (1970) 5 Cal.App.3d 749, 753, 755 [85 Cal.Rptr. 339] [execution permissible on support order directing husband to pay a percentage of his "gross taxable income"]; *DiMarco v. DiMarco* (1963) 60 Cal.2d 387, 389-390, 393 [33 Cal.Rptr. 610, 385 P.2d 2] [plaintiff wife entitled to determination of and execution on husband's obligation comprised of a fixed monthly payment and a percentage of his annual income over a certain amount]; see also Annot., Judgment Ambiguous or Silent as to Amount of Recovery as Defective for Lack of Certainty (1957) 55 A.L.R.2d 723, 729.) In the instant case, of course, James was certainly aware of the amount of his military retirement check, which amount was not disputed by Hilma. (*Id.*, at p. 727).

[4]Civil Code section 4380 provides: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary."

appropriate]; *Lehrer* v. *Lehrer* (1976) 63 Cal.App.3d 276, 279-280 [133 Cal.Rptr. 709][husband contended daughter's "emancipation" terminated his support obligation; having failed to seek modification of the support order, which did not provide for termination for this reason, he "was in no position to demand retroactive approval of his conduct"]; *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 730-732 [146 Cal.Rptr. 675] [attempt to harmonize *Jackson* and *Lehrer* by pointing to *Jackson's* stress on equities, in contrast to *Lehrer*, where the husband sought a retroactive determination that he was legally not liable for child support after a certain date].)

The court's "confirm[ation]" of James' support obligation, in response to a noticed motion and after a hearing at which James could have appeared and resisted the relief sought by Hilma, was a determination of the equities critical to the proper exercise of discretion in enforcing it. (See *Martin* v. *Martin* (1970) 5 Cal.App.3d 749, 753-755 [85 Cal.Rptr. 339] [order directing execution based on determination, after hearing, of husband's "gross taxable income," of which wife was entitled to a specified percentage of "alimony"].)

## II

James also claims that Hilma sought and obtained the support order adopted in the final decree of dissolution in lieu of her community property interest in his military retirement pay and that, therefore, it is not "alimony" within the contemplation of the limited waiver of sovereign immunity present in 42 United States Code sections 659(a), and 662(b); hence, he concludes, execution may not be had on his retirement pay.

■ The short answer to James' claim is that there is not a scintilla of evidence in the record to suggest that the support provision was in any way affected by the division of property. (Cf. *In re Marriage of Ames* (1976) 59 Cal.App.3d 234, 240 [130 Cal.Rptr. 435] [husband claimed that inadequate child support award was explained by inflated spousal support payments].) There is nothing in the record to indicate that the parties agreed on the terms, much less that the support provision constituted reciprocal consideration for the property provisions. (See *DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387, 391-392 [33

Cal.Rptr. 610, 385 P.2d 2].) In the absence of any such evidence,[5] we presume that the support order was arrived at by proper consideration of the statutory factors. (Civ. Code, § 4801, subd. (a).)[6]

The judgment (order denying James' motion to quash the writ of execution) is affirmed.

Puglia, P. J., and MacFarland, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1981.

..

---

[5]In this case, we need not consider the effect of Civil Code section 4811, subdivision (b), on the characterization of the spousal support provision under the federal statutes. It provides in pertinent part: "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders."

[6]Civil Code section 4801, subdivision (a) provides, in pertinent part: "(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties: [¶] (1) The earning capacity of each spouse, taking into account the extent to which the supported spouse's present and future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties. [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including the separate property, of each. [¶] (4) The duration of the marriage. [¶] (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (6) The time required for the supported spouse to acquire appropriate education, training and employment. [¶] (7) The age and health of the parties. [¶] (8) The standard of living of the parties. [¶] (9) Any other factors which it deems just and equitable."

*Assigned by the Chairperson of the Judicial Council.