Filed 3/18/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| DAVID ANTHONY DION et al., | |
| Plaintiffs and Respondents, | G064921 |
| v. | (Super. Ct. No. 30-2023-01313242) |
| SHIRLEY N. WEBER, as Secretary of State, etc., | O P I N I O N |
| Defendant and Appellant. | |

\* \* \*

Appeal from an order of the Superior Court of Orange County, Robert Shawn Nelson, Judge. Affirmed in part and reversed in part as directed.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Anthony R. Hakl, Anya M. Binsacca and Jeffrey A. Rich, Deputy Attorneys General for Defendant and Appellant.

Law Offices of Mark A. Redmond, Mark A. Redmond; Salisbury Legal Corp. and Lawrence J. Salisbury for Plaintiffs and Respondents.

\* \* \*

The plaintiffs David Anthony Dion et al. (Petitioners) in this lawsuit were victims of a Ponzi scheme. They filed a lawsuit alleging a single claim for fraud against two corporations (the corporations) involved in the scheme and obtained a default judgment against them. Petitioners were unable to collect the judgment, so they each filed an application with the defendant Shirley N. Weber, as Secretary of State etc. (the Secretary), for payment from the Victims of Corporate Fraud Compensation Fund (the fund; Corp. Code, § 2280 et seq.).[1]

The Secretary denied payment. Petitioners then petitioned the trial court for an order compelling the Secretary to pay them from the fund. The Secretary asserted it had properly denied the applications. Specifically, it argued Petitioners' fraud claim in the prior lawsuit was invalid because it had been filed after the statute of limitations had lapsed. The trial court rejected this argument and granted the petition. It found the corporations had waived the statute of limitations defense in the prior lawsuit, which barred the Secretary from asserting it in the current proceeding.

On appeal, the Secretary primarily contends the trial court erred by barring its statute of limitations defense. We find the court correctly rejected this argument and affirm this portion of the order. But we reach this conclusion through different means than the trial court. As a matter of first impression, we hold that under the fund's statutory scheme (§ 2280 et seq.), the trial court lacked authority to relitigate the merits of Petitioners' fraud claim from the prior lawsuit.

---

[1] All further undesignated statutory references are to the Corporations Code. We also note that since this opinion discusses actions taken by the Secretary's office rather than the Secretary in her personal capacity, we use the pronouns "it" and "its" when referring to the Secretary.

2

However, we agree with the Secretary that the trial court's order granting the petition violates section 2289, subdivision (a). This statute provides that the fund cannot pay more than $50,000 to any claimant for a single judgment. Here, the court's order appears to award certain Petitioners more than $50,000 from the fund, so we reverse this portion of the order. On remand, we direct the court to enter a new order that complies with the monetary limits of section 2289, subdivision (a).

FACTS AND PROCEDURAL HISTORY

I.

TERMINOLOGY

Generally, lawsuits to compel the Secretary to make payment from the fund consist of three separate phases. The terminology used to describe these phases and the events within them is critical to understanding the relevant statutory scheme. Thus, we begin by defining some of the terms used in this opinion.

We refer to a person that submits a claim to the Secretary for payment from the fund as a "claimant" or "petitioner."

As for the different phases, the first phase is the initial lawsuit in which a claimant obtains a judgment against the corporation "based upon [its] fraud, misrepresentation, or deceit." (§ 2282, subd. (a).) We generally refer to this initial lawsuit as the "underlying lawsuit," the causes of action asserted therein as the "underlying causes of action," and the resulting judgment as the "final judgment."

The second phase is the claimant's application to the Secretary seeking payment from the fund of the unpaid portion of the final judgment.

(See § 2282, subd. (a).) We refer to a claim seeking payment from the fund as a "payment claim."

The third phase follows the Secretary's denial (in whole or in part) of a claimant's application. In this phase, the claimant files a verified petition with the superior court for an order directing the Secretary to make payment from the fund. (§ 2287, subd. (a).) We generally refer to this verified petition as a "petition." Since the cause of action asserted in the petition seeks an order for payment from the fund, we also refer to it as a "payment claim."[2]

Definitions for the specific underlying lawsuit, underlying causes of action, and final judgment involved in this appeal will be provided below.

## II.

### THE UNDERLYING LAWSUIT

Petitioners are a subset of the more than 170 former plaintiffs who filed the lawsuit entitled *Andalon, et al. v. Pacific Housing and Development Corp., et al.* (Super.Ct. Orange County, 2021, No. 30-2020-01154306) (the *Andalon* lawsuit), against the corporations on August 7, 2020.[3] The complaint in the *Andalon* lawsuit (*Andalon* complaint) asserted a single fraud claim, alleging that the corporations' respective presidents, John

---

[2] A "cause of action" is "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person . . . ." (Black's Law Dict. (12th ed. 2024) p. 275, col. 1.)

[3] Petitioners are David Anthony Dion, Harold Hatakeda, Richard Leeds, John and Kathy Rabe, The Mountain Trust, Charlotte Small Trust, Robert Thomas, Andre Ting, Vana Family Trust, Joseph Vana, Elsie Watkins, Linda Whelan, Jin Woo, Allan Schwartz, and The Myron Bank Trust.

Packard and Michael Stewart, had used the corporations to carry out a massive Ponzi scheme.

The corporations failed to respond to the *Andalon* complaint, resulting in the entry of default against them. The trial court then entered a default judgment against the corporations in the total amount of $8,642,166.34 (the *Andalon* judgment). From this total amount, the *Andalon* judgment awarded specific sums to each plaintiff, which ranged from $5,000 to $80,782.

III.

PETITIONERS' PAYMENT CLAIMS

The fund is administered by the Secretary "for the sole purpose of providing restitution to the victims of a corporate fraud." (§ 2280.) Victims can apply for restitution from the fund after obtaining a final judgment against a corporation "based upon the corporation's fraud, misrepresentation, or deceit, made with intent to defraud." (§ 2282, subd. (a).) The specific application requirements will be discussed later in this opinion.

Based on the *Andalon* judgment, each Petitioner filed an application with the Secretary for payment from the fund in December 2021. The Secretary responded with a letter noting several deficiencies in the applications. As relevant here, the Secretary questioned whether the *Andalon* judgment was "based on a valid claim for corporate fraud." In particular, the Secretary observed that Packard and Stewart were indicted for fraud in 2014, but the *Andalon* lawsuit was not filed until 2020. Thus, it requested evidence that the *Andalon* fraud claim had not been barred by the applicable three-year statute of limitations (Code Civ. Proc., § 338, subd. (d)), including evidence "that there was no duty to investigate before August 7, 2017" (i.e., three years before the *Andalon* lawsuit was filed).

5

Petitioners replied that "[t]he statute of limitations issue you raise was pled in the [*Andalon*] complaint . . . . [Citation.] "'A defendant's failure to answer the complaint admits the well-pleaded allegations of the complaint, and no further proof of liability is required.'"

The Secretary and Petitioners exchanged several more letters. The former continued to request more evidence that the *Andalon* fraud claim had not been time-barred when the *Andalon* lawsuit was filed. The latter maintained they had no knowledge of the corporations' involvement in the fraudulent Ponzi scheme until 2018.

The Secretary denied each Petitioner's payment claim in September 2022. It explained that Petitioners had "failed to meet their burden of showing that the default judgment submitted in support of the Applications was based on a valid cause of action for corporate fraud." The denial letter also noted several other deficiencies, none of which are material to this appeal.

IV.

THE PETITION AT ISSUE

In March 2023, Petitioners filed a verified petition in the trial court seeking an order directing the Secretary to pay them from the fund. After the Secretary's demurrer was overruled, Petitioners filed a trial brief. The Secretary then filed an answer to their petition and a separate opposition to the trial brief.

The Secretary's opposition argued that the *Andalon* fraud claim was time-barred. Petitioners' fraud claim was based on investments made in 2008 and 2009, and the *Andalon* complaint had admitted that (1) Packard and Stewart were indicted for various fraud-related crimes in September 2013, (2) Packard pleaded guilty to these claims in 2014, (3) Stewart was

6

convicted of them in 2015, and (4) Packard and Stewart were ordered to pay restitution in 2016. Accordingly, the Secretary claimed that Petitioners' duty to investigate the *Andalon* fraud claim had arisen by at least 2016, and the claim's three-year limitations period had lapsed prior to the *Andalon* lawsuit's filing in August 2020.

Following a hearing, the trial court issued an order granting the petition at issue (the order). It found Petitioners had established the *Andalon* judgment was "based on a valid cause of action against the corporations . . . for fraud, misrepresentation, or deceit," and had complied with section 2282's procedural requirements.

The trial court was unpersuaded by the Secretary's statute of limitations argument. It observed, the "Secretary cites no authority providing that [it] can resurrect a statute of limitations defense that has otherwise been waived by the [corporations], and the court is aware of none. Because the limitations defense can be waived – and was, in fact, waived by the [corporations] in the underlying *Andalon* [lawsuit] – that defense does not affect the validity of Petitioner's [*sic*] corporate fraud claim." The court also rejected the Secretary's other arguments.

In this appeal of the order, the Secretary primarily claims that the trial court erred by barring its statute of limitations defense. In the alternative, the Secretary contends the matter must be remanded so the trial court can specify the exact amounts to pay each Petitioner from the fund. We disagree with the first argument but agree in part with the second.[4]

---

[4] The Secretary claims to be appealing a judgment in this case. However, the record only appears to contain the order. We have not seen a judgment in the record, nor has the Secretary explained why the order should be treated as a judgment.

DISCUSSION

I.

THE STATUTORY SCHEME

*A.  The Fund*

"The Legislature created the Fund in 2002, as part of the California Corporate Disclosure Act . . . , for 'the sole purpose of providing restitution to the victims of a corporate fraud.' [Citation.] The Fund is sustained largely by corporate disclosure fees, paid by each corporate entity when filing its annual statement of information. [Citation.] It is administered by the Secretary. [Citation.] The statute initially required the Secretary to 'adopt regulations regarding the administration of the [F]und and the eligibility of victims to receive compensation from the [F]und.'" (*Alves v. Weber* (2025) 111 Cal.App.5th 99, 109–110 (*Alves*).)

In 2012, the Legislature passed Senate Bill No. 1058 (SB 1058), which "'revise[d] and recast' the regulations promulgated by the Secretary and codified the requirements to receive compensation from the Fund. [Citation.] The impetus behind this change was to streamline the process, as the Secretary's 'regulations [we]re burdensome and often [led] to unnecessary delay in payments of compensation and result[ed] in underutilization of the Fund.' [Citation.] The delayed payments 'only continue[d] to victimize the exact people whom the Fund was created to benefit.'" (*Alves, supra,* 111 Cal.App.5th at p. 110.)

Under the current statutory scheme, "'[w]hen an aggrieved person obtains a final judgment in a court of competent jurisdiction against a corporation based upon the corporation's fraud, misrepresentation, or deceit, made with intent to defraud,'" the person may submit a payment claim by filing an application with the Secretary. (§ 2282, subd. (a).) Before filing such

8

an application, the claimant must "make[] 'diligent collection efforts' for the amount unpaid on the judgment." (*Alves, supra,* 111 Cal.App.5th at p. 110.) Payments from "the fund shall not exceed fifty thousand dollars ($50,000) for any one claimant per single judgment." (§ 2289, subd. (a).)

An application must be delivered to the Secretary within 18 months of the final judgment. (§ 2282, subd. (b).) The requirements for the application are contained in section 2282, subdivision (c), which we will discuss in detail below. (§ 2282, subds. (c)(1)-(8).) "If the final judgment . . . was by default, stipulated, a consent judgment, or pursuant to Section 594 of the Code of Civil Procedure or if the action against the corporation or its agent was defended by a trustee in bankruptcy, the Secretary . . . may request additional documents and information from the claimant to determine whether the claim is valid." (§ 2282, subd. (d)(2).)

If the Secretary deems an application incomplete, it must send the claimant a list of deficiencies. (§ 2283, subd. (a).) Once an application is complete, the Secretary "may deny or grant the application or may enter into" a settlement with the claimant to pay less than the claim's full amount. (§ 2284, subd. (b).) It must issue a final written decision within 90 days of receiving the completed application. (§ 2284, subd. (a).)

B.  *The Petition*

If the Secretary denies the application, the claimant has six months to submit a petition to the superior court. (§ 2287 subd. (a).) The Secretary has 30 days to respond to a petition. (§ 2287, subd. (c).) Upon the claimant's request, the trial court will set an evidentiary hearing, in which the claimant has "the burden of proving compliance with the requirements of Section 2282 by competent evidence at an evidentiary hearing. The claimant [is] entitled to a de novo review of the merits of the application as contained

9

in the administrative record." (§ 2287, subd. (d).) In ruling on a petition, the trial court "shall order payment out of the fund only upon a determination that the [claimant] has a valid cause of action within the purview of Section 2282, and has complied with Section 2287." (§ 2288, subd. (a).)

Section 2288, subdivision (b), establishes a dual-track system for trial courts to evaluate petitions. The applicable track is based on the manner in which the final judgment was obtained, and each track imposes a different burden of proof for establishing the required showing of fraud, misrepresentation, or deceit.

The first track is contained in section 2288, subdivision (b)(1). It generally applies to final judgments arising from contested adversarial proceedings in which the court resolved disputed issues. Under this track, the petitioner has the benefit of a rebuttable presumption that the final judgment arose from the corporation's fraudulent activity. This subdivision provides, "[t]he Secretary . . . may defend any action on behalf of the fund and shall have recourse to all appropriate means of defense and review, including examination of witnesses and the right to relitigate any issues that are material and relevant in the proceeding against the fund. The claimant's [final] judgment shall create a rebuttable presumption of the fraud, misrepresentation, or deceit by the corporation, which presumption shall affect the burden of producing evidence." (§ 2288, subd. (b)(1).)

The second track is set forth in section 2288, subdivision (b)(2). It applies "[i]f the civil judgment, arbitration award, or criminal restitution order in the underlying action on which the final judgment in favor of the petitioner was by default, stipulation, consent, or pursuant to Section 594 of the Code of Civil Procedure, or if the action against the corporation or its agent was defended by a trustee in bankruptcy . . . ." (§ 2288, subd. (b)(2).)

10

The burden of proof is switched in this track. Rather than getting the benefit of a rebuttable presumption, "the petitioner [has] the burden of proving that the cause of action against the corporation or its agent was for fraud, misrepresentation, or deceit." (§ 2288, subd. (b)(2).)

## II.

## STATUTORY INTERPRETATION

### A. Background

The Secretary contends that the trial court erred by finding it could not assert the statute of limitations as a defense. Its argument is primarily rooted in section 2288, subdivision (a), which directs lower courts to "order payment out of the fund only upon a determination that the [claimant] has *a valid cause of action* within the purview of Section 2282 . . . ." (Italics added.) The Secretary interprets "valid cause of action" to mean the underlying cause of action, i.e., the *Andalon* fraud claim here. Thus, the Secretary maintains its statute of limitations defense was relevant to assessing whether the *Andalon* fraud claim was "a valid cause of action" under this statute.

The Secretary's argument requires us to interpret the meaning of section 2288, subdivision (a), as well as the surrounding statutory scheme. Questions of statutory interpretation are reviewed de novo. (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658.) The goal of statutory interpretation, "'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context.'" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

11

"When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' [Citation.] Courts also look to the legislative history of the enactment. 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.] Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)

"'[C]ourts should liberally construe remedial statutes in favor of their protective purpose' [citations], while remaining mindful that liberal construction of remedial statutes 'does not mean that a court may read into the statute that which the Legislature has excluded, or read out that which it has included.'" (*Alves*, *supra*, 111 Cal.App.5th at p. 109.)

Though our analysis of the relevant statutory scheme differs from the trial court, we affirm the order. (*Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006 [appellate courts review the trial court's ruling, not its reasoning].) We disagree with the Secretary's interpretation of section 2288, subdivision (a), based on the statute's text, the surrounding statutory scheme, certain maxims of construction, the relevant legislative history, and public policy. As we explain, "cause of action" in section 2288, subdivision (a), refers to a payment claim, not the underlying causes of action. In other words, this statute directs the trial court to perform a limited inquiry into whether the claimant submitted a valid payment claim to the Secretary. It

does not authorize the Secretary to relitigate the merits of the underlying causes of action.[5]

*B. Verb Tense*

The term "cause of action" is only used twice in section 2288. It appears in section 2288, subdivision (a), and again in section 2288, subdivision (b)(2). Different verb tenses are used in each instance. "In construing statutes, the use of verb tense by the Legislature is considered significant." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776.)

Section 2288, subdivision (a), authorizes the trial court to order payment from the fund where "the aggrieved party *has a valid cause of action* within the purview of Section 2282." (Italics added.) Notably, this subdivision uses the present tense "has" in referring to "cause of action." In contrast, section 2288, subdivision (b)(2), uses the past tense in connection with "cause of action." It states that if the final judgment was obtained through certain means like by default or stipulation, "the petitioner shall have the burden of proving that the *cause of action* against the corporation or its agent *was* for fraud, misrepresentation, or deceit." (§ 2288, subd. (b)(2), italics added.)

A "'statute's use of two verb tenses . . . indicates that two time periods are involved.'" (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1008.)

---

[5] Section 2288, subdivision (a), also requires petitioners to comply with section 2287 in filing their petitions. Under section 2287, subdivision (a), petitioners must (1) file their petition within six months of the Secretary's denial of their payment claim, (2) file their petition in the correct superior court (§ 2287, subd. (a)), (3) serve a copy of the petition on the Secretary and file a proof of service with the court (§ 2287, subd. (b)), and (4) prove compliance with section 2282's requirement (§ 2287, subd. (d)). The first three requirements are not relevant to this appeal.

Section 2288, subdivision (b)(2)'s use of *past tense* and the surrounding context indicate that the "cause of action" to which it refers is the underlying cause of action, which must be based in fraud, misrepresentation, or deceit. Since section 2282, subdivision (a), uses the *present tense* "has," we can infer that "cause of action" in this subdivision refers to a cause of action asserted in a different time period, i.e., the current payment claim in the petition. The trial court's review of such a payment claim is limited in scope, as we explain next.

## C. Limited Scope of Review

### 1. Interplay with section 2282

The trial court's review of a "cause of action" under section 2288, subdivision (a), is also expressly tied to section 2282, which outlines the application requirements for payment claims to the Secretary. Specifically, section 2288, subdivision (a), directs the trial court to order payment from the fund where "the [claimant] has a valid cause of action *within the purview of Section 2282*." (Italics added.) Similarly, section 2287 instructs claimants to file petitions "based upon the grounds set forth in the application to the Secretary of State." (§ 2287, subd. (a).) And after filing a petition, "[t]he claimant shall have the burden of proving *compliance with the requirements of Section 2282* by competent evidence at an evidentiary hearing. The claimant shall be entitled to a de novo review *of the merits of the application* as contained in the administrative record." (§ 2287, subd. (d), italics added.) Thus, we must explore the requirements of section 2282 to understand the scope of the court's review of a petition.

Under section 2282, subdivision (a), to be eligible for payment from the fund, a claimant must obtain "a final judgment . . . based upon the corporation's fraud, misrepresentation, or deceit, made with intent to

14

defraud." If the claimant is unable to collect the final judgment from the judgment debtor after making "diligent collection efforts," he or she may apply to the Secretary "for payment from the fund . . . for the amount unpaid on the judgment that represents the awarded actual and direct loss, any awarded compensatory damages, and awarded costs to the claimant in the final judgment, excluding punitive damages." (§ 2282, subd. (a).)

The specific information to be included in applications to the Secretary is contained in section 2282, subdivision (c). The application must be made on a designated form and include:

- The claimant's name and address. (§ 2282, subd. (c)(1).)
- Contact information for the claimant's attorney or the claimant's phone number if unrepresented. (§ 2282, subd. (c)(2).)
- The corporation's name and address. (§ 2282, subd. (c)(3).)
- Identification of the final judgment, the amount that remains unreimbursed, and "an explanation of the [payment] claim's computation." (§ 2282, subd. (c)(4).)
- Copies of the final judgment and the underlying complaint plus any amendments. (§ 2282, subd. (c)(5).)
- For criminal restitution orders only, the claimant must "provide the charging document and the restitution order." (§ 2282, subd. (c)(6).)
- A description of the steps taken to identify the judgment debtor's assets that could be used to satisfy the final judgment. (§ 2282, subd. (c)(7).)
- Representations from the claimant that the final judgment (1) "was for fraud, misrepresentation, or deceit by a corporation . . . with the intent to defraud," (2) is wholly or partially unpaid, and (3) has not been discharged in bankruptcy or is not potentially subject to discharge if there is an open bankruptcy case. (§ 2282, subd. (c)(8).)

15

Significantly, none of the above categories reasonably include information about the merits of the underlying causes of action. And the Secretary cannot deny a claim due to a claimant's failure to provide information outside the above categories. Section 2282, subdivision (d)(1), expressly bars the Secretary from doing so unless an enumerated exception applies: "Except as provided in paragraphs (2), (3), and (4), the Secretary . . . *shall not condition an award of payment* from the fund upon a claimant providing any additional information or documents *other than those prescribed in [section 2282] subdivision (c).*" (§ 2282, subd. (d)(1), italics added.)

Thus, absent an exception, the Secretary was precluded from denying Petitioners' payment claim based on their alleged failure to show that the *Andalon* fraud claim was not time-barred.

*2. Exceptions to section 2282, subdivision (d)(1)*

There are three scenarios in which the Secretary can request information outside the categories prescribed in section 2282, subdivision (c). (§ 2282, subds. (d)(2)-(4).) Two do not apply here. One concerns a final judgment that fails to state the amount awarded for "actual loss and compensatory damages" (§ 2282, subd. (d)(3)), and the other applies when there is no finding of "the insolvency of the judgment debtor or lack of assets to pay the claimant" (§ 2282, subd. (d)(4)).

The remaining exception in section 2282, subdivision (d)(2), states that if the final judgment "was by default, stipulated, a consent judgment, or pursuant to Section 594 of the Code of Civil Procedure or if the action against the corporation or its agent was defended by a trustee in bankruptcy, the Secretary of State may request additional documents and

16

information from the claimant *to determine whether the claim is valid.*" (Italics added.)

The Secretary appears to believe that the statute of limitations can be asserted to assess the validity of "the claim" under the above exception. In other words, it equates "the claim" to the underlying causes of action. We disagree. The term "the claim" appears three other times in section 2282, all in reference to a payment claim and not the underlying causes of action. Section 2282, subdivision (c)(8)(C), requires a claimant's application to represent "[t]hat the *judgment underlying the claim* meets the requirements of [section 2282] subdivisions (a) and (b)." (Italics added.) Likewise, section 2282, subdivision (c)(4), requires a claimant to identify "the final judgment, *the amount of the claim* that remains unreimbursed from any source, and an explanation of *the claim's* computation." (Italics added.) We should apply the same meaning to "the claim" throughout all of section 2282. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 716.) Thus, "the claim" referenced in section 2282, subdivision (d)(2), should also refer to a payment claim.[6]

Moreover, other sections in the relevant statutory scheme demonstrate that "the claim" refers to a payment claim, not the underlying causes of action. (*Hassan v. Mercy American River Hospital*, *supra*, 31 Cal.4th at pp. 715–716.) Section 2284, subdivision (b), states the Secretary "may deny or grant the application or may enter into a compromise with the claimant to pay less in settlement than the full amount of *the claim*. If the claimant refuses to accept a settlement of *the claim* offered by the [Secretary],

---

[6] Unlike "cause of action," which was used twice in section 2288, there are no verb tense discrepancies in the use of "the claim" in section 2282.

the written decision of the [Secretary] shall be to deny *the claim*." (Italics added.) Likewise, section 2283, subdivision (b), provides that if a dispute arises between the Secretary and claimant as to "whether the application is complete, the claimant may immediately file *the claim* with the court pursuant to Section 2287." (Italics added.)

In sum, the exception in section 2282, subdivision (d)(2), only allows the Secretary to "request additional documents and information from the claimant to determine" whether the payment claim at issue is valid. (Italics added.) It does not authorize the Secretary to request information concerning the validity of the underlying causes of action. As such, the Secretary cannot deny payment claims based on a claimant's failure to provide information on the merits of the underlying causes of action. (§ 2282, subd. (d)(1).)

To the extent the Secretary believes that determining the validity of a payment claim under section 2282, subdivision (d)(2), includes review of the merits of the underlying causes of action, we again disagree. As discussed above, no other subdivision in section 2282 requires a claimant to prove the validity of the underlying causes of action. And we do not think the Legislature intended section 2282, subdivision (d)(2), to drastically expand the scope of the Secretary's review. (See *Alves*, *supra*, 111 Cal.App.5th at p. 109 [courts should liberally construe remedial statutes in favor of their protective purpose]; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [courts should adopt a statutory construction that best serves to harmonize the statute internally].) Further, this argument is belied by SB 1058's legislative history.

D.  *Legislative history*

SB 1058's legislative history also indicates that the Legislature intended for the Secretary and trial court to conduct a limited review of a

18

payment claim to determine whether it meets section 2282's requirements. The Legislature enacted SB 1058 to simplify and streamline the application process to make it easier for fraud victims to get paid from the fund. (*Alves*, *supra*, 111 Cal.App.5th at pp. 110–111.)

"[A]fter the Fund had been in place for about a decade," the Legislature passed SB 1058 to "revamp[] the statutory framework over concerns that the Fund was underutilized and that corporate fraud victims faced delays and obstacles in obtaining relief." (*Alves*, *supra*, 111 Cal.App.5th at pp. 116–117.) SB 1058 was drafted in response to a newspaper article detailing fraud victims' difficulty getting paid from the fund. The article "reveal[ed] a lengthy saga of frustrated communication" between the victims and the Secretary. (Sen. Rules Com., Off. Of Sen. Floor Analyses, Analysis of Sen. Bill No. 1058 (2011-2012 Reg. Sess.) as amended Aug. 28, 2012, p. 6 (Senate Analyses).) "The correspondence suggest[ed] that there [was] significant room for improving the rules governing the victims' application process, as well as the process by which the [Secretary] evaluate[d] applications, deem[ed] them complete, and disburse[d] money from the Fund. Existing shortcomings . . . created procedural hurdles, which blocked timely access to the Fund by [corporate fraud] victims." (Senate Analyses, p. 6.) In response, SB 1058 "add[ed] new statutory language to facilitate approval of valid claims from the Fund." (Senate Analyses, p. 2.)

Nothing in SB 1058's legislative history indicates the Legislature intended for either the Secretary or the trial court to review the merits of the underlying causes of action when evaluating a payment claim. The legislative history is silent as to this issue. In drafting the application requirements, the Legislature was primarily concerned with the claimant providing the Secretary with (1) a copy of the final judgment and underlying complaint "for

19

a finding of fraud, misrepresentation, or deceit, made with the intent to defraud" and (2) a description of the attempts to uncover judgment debtor assets that could be used to satisfy the final judgment. (Senate Analyses, p. 4.) Nothing indicates the Legislature intended the claimant to submit information concerning the merits of the underlying causes of action.

Rather, SB 1058's legislative history indicates that the Legislature intended for the trial court to conduct a limited review of petitions to determine whether a claimant had submitted a valid application to the Secretary. It was intended to "[p]ermit[] a claimant whose application for compensation from the Fund is denied by the [Secretary] to petition a court . . . *for de novo review of the merits of the application based on the administrative record*." (Senate Analyses, p. 5, italics added; see § 2287, subd. (d).)

Finally, nothing in SB 1058's legislative history suggests that the Legislature even considered whether the Secretary could review the merits of the underlying causes of action. As part of the drafting process for SB 1058, the Legislature studied the Secretary's then existing procedures for approving and denying payment claims. It found that the Secretary had denied 103 payment claims as of October 2011. (Senate Analyses, p. 7.) The Legislative History includes a chart explaining the Secretary's reasons for

these denials. Significantly, none of these reasons appear to relate to the merits of the underlying causes of action.

| Reason for Denial | Number of Applications Denied |
|---|---|
| The victims applied for compensation based on judgments that were not based on corporate fraud | 52 |
| A judgment was lacking, or the judgment was not issued by a court in California | 23 |
| Applications were based upon judgments against entities that were not corporations | 14 |
| Applications were based on judgments that were not final | 5 |
| Applicants demonstrated insufficient proof regarding their attempts to collect from the corporation and its corporate officers prior to filing a claim with the Fund | 4 |
| Applications were submitted more than 18 months following final judgment | 3 |
| Applicant was not a party to the court judgment | 1 |
| Application was based on a judgment issued prior to January 1, 2003 | 1 |

(Senate Analyses, pp. 7-8.)

If the Secretary had been denying payment claims based on the merits of the underlying causes of action before SB 1058's enactment, we might infer that SB 1058's silence on this issue was a tacit endorsement of this practice. But, given the above chart, we cannot make this inference. Instead, it appears SB 1058 was silent on this issue because the Legislature did not anticipate that the Secretary would begin denying payment claims on this ground after its enactment. Nothing in SB 1058's text or legislative history indicates the Legislature sought to introduce this new ground for denying a payment claim. And allowing the Secretary to relitigate the merits of the underlying causes of action would be a time consuming process that would undermine SB 1058's goal to expedite the application process.

21

*E. Public Policy*

Finally, as a matter of public policy, it makes little sense for the Secretary and the trial court to relitigate the merits of an underlying cause of action that was already adjudicated in the final judgment. For instance, the doctrine of claim preclusion (also known as res judicata) "provides that 'a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit.'"[7] (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 227–228.) This doctrine exists to "protect the integrity of courts by fostering finality and minimizing the potential for conflicting judgments, which serves to promote public confidence in the judicial process." (*Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1099.)

The question we face here raises the same concerns addressed by the claim preclusion doctrine. Allowing the Secretary to relitigate the merits of the underlying causes of action undermines the judicial goals of fostering finality and would create a significant possibility of inconsistent judgments. Here, the *Andalon* judgment found the corporations liable for fraud. If the Secretary prevailed on its statute of limitations argument, it would in effect reverse the *Andalon* judgment by declaring the *Andalon* fraud claim invalid.

---

[7] "A judgment by default is res judicata as to all issues aptly pleaded in the complaint, and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint." (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 382.) Judgments rendered by consent or stipulation are also final judgments on the merits. (*Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 460–461.)

To clarify, we do not mean to suggest that claim preclusion applies here. We only find the purpose of this doctrine informative in interpreting the relevant statutory scheme.

*F. Remaining Arguments*

The Secretary contends section 2288, subdivision (b)(1), allows it to relitigate the merits of the *Andalon* fraud claim. In particular, it points to the portion of this subdivision stating that the Secretary "shall have recourse to all appropriate means of defense and review, including examination of witnesses and the right to relitigate any issues that are material and relevant in the proceeding against the fund." (§ 2288, subd. (b)(1).)

As explained above, section 2288, subdivision (b), creates a dual-track system with different burdens of proof for proving a judgment arises from fraudulent activity. Since Petitioners obtained a default judgment, the relevant track is section 2288, subdivision (b)(2), and the Secretary cannot rely on section 2288, subdivision (b)(1).

Further, even if the procedures authorized by section 2288, subdivision (b)(1), were to apply here in some form, they do not authorize the Secretary to raise *any* defense or issue. Rather, section 2288, subdivision (b)(1), provides a limited right. It specifies that the Secretary can assert "all *appropriate* means of defense and review." (Italics added.) Likewise, it can only relitigate issues "*material and relevant* in the proceeding against the fund." (§ 2288, subd. (b)(1), italics added.)

As discussed, the Secretary's defenses are limited. The trial court is instructed to order payment from the fund only if a claimant has a "valid cause of action within *the purview of Section 2282*." (§ 2288, subd. (a), italics added.) Section 2287 likewise ties the court's review of a petition to section 2282. Claimants are instructed to file petitions "based upon the grounds set

23

forth *in the application* to the Secretary." (§ 2287, subd. (a), italics added.) Claimants then have "the burden of proving compliance with the *requirements of Section 2282*" and are "entitled to a de novo review of the *merits of the application* as contained in the administrative record." (§ 2287, subd. (d), italics added.)

The above sections curtail the Secretary's right to defense and review under section 2288, subdivision (b)(1). To be appropriate, material, and relevant to the proceeding against the fund, the Secretary's arguments must be within the scope of issues allowed under section 2282. (See § 2282.) Nothing in section 2282 allows the Secretary to litigate the merits of the underlying causes of action.

The Secretary's argument also appears to assume that the right to litigate the merits of the underlying causes of action must exist, or there would be no need to call witnesses or relitigate issues. We disagree. Witnesses and litigation may be required to determine whether a payment claim complies with section 2282's requirements.

Witnesses and litigation might be necessary determine whether a final judgment was for "fraud, misrepresentation, or deceit, made with intent to defraud" as required by section 2282, subdivision (a). Nothing in the statutory scheme requires "that the complaint underlying the [final] judgment contain a particular cause of action presented in a certain format." (*Alves*, *supra*, 111 Cal.App.5th at p. 113.) "[T]he Legislature contemplated the Secretary would look beyond the causes of action as alleged in the civil complaint to the underlying facts of the case where needed." (*Id*. at p. 114.) For example, a "breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances." (*Ash v. North American Title Co.*

24

(2014) 223 Cal.App.4th 1258, 1276.) Thus, witnesses could be called to assess whether such an underlying cause of action involved fraud.[8]

Witnesses and further litigation could also be required to determine the amount of damages the petitioners "were awarded for actual loss and compensatory damages" (§ 2282, subd. (d)(3)), or whether the judgment debtor truly lacks assets to pay the final judgment (§ 2282, subd. (d)(4)).

III.

PAYMENT AMOUNTS

"[T]he liability of the [Fund] shall not exceed fifty thousand dollars ($50,000) for any one claimant per single judgment finding fraud, misrepresentation, or deceit, made with the intent to defraud." (§ 2289, subd. (a).) Here, the order does not list the amounts the Secretary is required to pay each Petitioner from the fund. Instead, it "direct[s] payment out of [the fund] in the amounts awarded in the [*Andalon* judgment] issued August 2, 2021."

The Secretary asserts the trial court erred by failing to list the specific sums payable from the fund to each Petitioner in the order. Due to this omission, it claims the order is not sufficiently definite under Code of Civil Procedure section 577.5, especially considering the $50,000 cap set forth in section 2289, subdivision (a). While the Secretary has failed to show the

---

[8] Promissory estoppel is another cause of action that may or may not be based in fraud. A claim for promissory estoppel does not require a misrepresentation. (*Piccinini v. California Emergency Management Agency* (2014) 226 Cal.App.4th 685, 689.) But it can arise from a false promise. (See *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 929–930.)

order violates Code of Civil Procedure section 577.5, it violates section 2289, subdivision (a).

Under Code of Civil Procedure section 577.5, "[i]n any judgment, or execution upon such judgment, the amount shall be computed and stated in dollars and cents, rejecting fractions." The Secretary has not shown that the order is a "judgment, or execution upon [a] judgment" within the meaning of Code of Civil Procedure section 577.5. Nor does it cite any judgment in the record. Rather, the Secretary assumes this statute applies without providing any authority or analysis.

Even assuming Code of Civil Procedure section 577.5 applies to the order, "a judgment possesses the requisite *certainty* . . . if the amount, though not so expressed, is definitely ascertainable." (*In re Marriage of Sandy* (1980) 113 Cal.App.3d 724, 728, fn. 3.) The order meets this standard. It directs the Secretary to make payments in the amounts set forth in the *Andalon* judgment. Since the *Andalon* judgment lists the specific amounts awarded to each Petitioner, the sum awarded to each Petitioner in the order "is definitely ascertainable." (*Ibid*.)

However, the *Andalon* judgment awarded several Petitioners more than $50,000. The order does not contain any language limiting the amount of these payments per section 2289, subdivision (a). Thus, it appears to direct the Secretary to pay several Petitioners sums in excess of $50,000 from the fund, violating section 2289, subdivision (a).

Petitioners acknowledge the $50,000 limit in section 2289, subdivision (a), and claim that none of them are seeking more than $50,000 from the fund. But this is not expressed in the order. As such, we reverse the order to the extent it violates section 2289, subdivision (a). On remand, the trial court shall enter a new order that complies with this statute.

26

## DISPOSITION

The order is affirmed in part and reversed in part as directed. On remand, the trial court shall enter a new order that complies with section 2289, subdivision (a). The parties shall bear their own costs on this appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

27